# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1020
_____

United States of America

*Plaintiff - Appellee*

v.

Patricia Robertson, also
known as Patti Cavanaugh

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Fargo
_____

Submitted: October 19, 2012
Filed: March 11, 2013
_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Patricia Robertson, a member of the Spirit Lake Tribe in North Dakota, administered the Tribe's Low Income Home Energy Assistance Program, a heating assistance program for low-income families administered by the Tribe and funded by the Department of Health and Human Services. The parties and witnesses refer to this program as "LIHEAP." From 2007 through 2011, Robertson approved applications

for heating assistance by her adult daughters, Priscilla and Michelle, that did not disclose Robertson as a resident of the households that would receive this benefit, nor her substantial income. Robertson was charged with knowingly and willfully embezzling, stealing, and misapplying tribal property in violation of 18 U.S.C. § 1163.[1] After a three-day trial, a jury found Robertson guilty of embezzlement and willful misapplication. The district court[2] varied downward from the advisory range of six to twelve months in prison and sentenced her to three years probation subject to conditions including that she not consume alcohol. Robertson appeals her conviction, arguing the district court committed two instruction errors. She appeals the sentence, arguing the court abused its discretion in imposing a special condition of probation prohibiting alcohol consumption. We affirm.

## I. Background.

To qualify for a federal grant of LIHEAP funds, the Tribe's grant application included a Detailed Model Plan. As required by 42 U.S.C. § 8624(b)(2)(B), the Plan provided that the Tribe as grantee would "make payments under this subchapter only with respect to . . . households with incomes which do not exceed the greater of (i) an amount equal to 150 percent of the poverty level for such State or (ii) an amount equal to 60 percent of the State median income." This requirement meant that, during the fiscal years in question, if Robertson had been disclosed as a resident, her salary

---

[1]Section 1163 provides in relevant part: "Whoever embezzles, steals . . . willfully misapplies, or willfully permits to be misapplied, any of the . . . funds . . . or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization" shall be fined or imprisoned not more than five years if the value of that property exceeds $1,000.

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

would have made her daughters' residences ineligible for LIHEAP benefits unless the household included at least eight members.

To establish eligibility, the Tribe requires each applicant to submit a written application listing all members of the household for which heating fuel is being requested, and their incomes. After the application is approved, the Tribe's LIHEAP office orders deliveries of heating fuel for the applicant's residence and pays the fuel supplier directly. The applicant must report changes in household composition or income level that occur during the heating season. As Coordinator of the LIHEAP program, Robertson was responsible for approving applications, verifying the income of persons listed as living in the household, and monitoring program compliance. Her responsibilities included "review [of] at least 10 cases per month for completeness of application, data collection, verification . . . and accurate payments."

At trial, the government introduced evidence that Michelle Bear, Robertson's daughter, submitted LIHEAP applications in fiscal 2008 and 2009 for a household located in St. Michael, and that another daughter, Priscilla Bear, submitted LIHEAP applications in fiscal 2009, 2010, and 2011 for households located in Fort Totten and at a different Post Office address in St. Michael. Robertson approved the daughters' applications even though they did not list Robertson as a household member and did not include her earnings when listing the "GROSS income of ALL PERSONS living in the home" in response to question 3 on the standard application form. Michelle's applications also did not list Robertson's husband James and his income even though James lived in Robertson's household until some time after he and Robertson separated in December 2008. Michelle Bear, a government witness, testified that she knew Robertson and James were working but did not list them on the October 2007 application because, "My mom told me not to put them on because she was going to be moving out." Robertson did not move out until the spring or summer of 2008.

When interviewed by an FBI agent in February 2011, Robertson admitted that she lived with a number of her children and grandchildren in the Fort Totten home for most of the fiscal 2009 heating season and in the St. Michael home at the other times in question. She signed an interview statement reciting:

> I am responsible for everyone that lives with me. They need my help. I should have put in for the program myself, but I thought it would look bad if I was on my own program. I'm sorry and I'm willing to do a payback plan for the [fuel] fill-ups at my house under Priscilla's name and Michelle Bear's name. I made a mistake. I'm not perfect.

Three of Robertson's children testified for the defense that, during these winter heating seasons, Robertson lived with and supported an extended household that included several of her grandchildren, children, and children's significant others. These witnesses admitted that the households varied at times as young adults moved in and out, and acknowledged imperfect memories of the exact comings and goings. Leaving aside the earnings of James and any other undisclosed adult who was employed, as to which there was no trial evidence, this testimony, generously construed, suggested that the size of the households for which Michelle and Priscilla applied ranged from eight to fifteen individuals, in which case the combined income of Robertson and the applying daughters was within the program's 150% eligibility requirement. Therefore, defense counsel argued to the jury, even if Robertson knowingly and intentionally approved inaccurate applications, she did not act with the criminal intent required to constitute embezzling, stealing, or willfully misapplying LIHEAP benefits.

Following the three-day trial, the jury found Robertson guilty of violating § 1163 in a verdict that included, at the request of defense counsel, special findings that she embezzled and misapplied, but did not steal, tribal property.

## II. The Instruction Issues.

Both alleged instruction errors concern the *mens rea* requirements to convict a defendant of embezzling or willfully misapplying tribal funds in violation of 18 U.S.C. § 1163. The district court addressed these requirements with the following final instructions to the jury:

> The offense of embezzlement and theft from an Indian tribal organization . . . has three essential elements, which are:
>
> One, Patricia Robertson embezzled, stole or misapplied property . . . belonging to the Low Income Home Energy Assistance program of the Spirit Lake Tribe, Fort Totten, North Dakota. . . .
>
> To "embezzle" means to knowingly, voluntarily and intentionally take, or convert to one's own use, the property of another which came into the defendant's possession lawfully. . . .
>
> To "misapply" means to voluntarily and intentionally use the funds or property of an Indian tribal organization knowing that such use is unauthorized, or unjustifiable or wrongful. Misapplication includes the wrongful taking or use of the money or property of an Indian tribal organization by its agent for her own benefit or the use or benefit of some other person.

The court's definitions of "embezzle" and "misapply" were precisely what Robertson and the government proposed, so the issues on appeal are limited to Robertson's proposal of additional instructions the court declined to give. We review the district court's jury instructions for abuse of discretion. United States v. Brown, 478 F.3d 926, 927 (8th Cir. 2007). "We will uphold an instruction on the *mens rea* element of a federal crime if it 'fairly and adequately' sets forth the statutory requirement." United States v. Jain, 93 F.3d 436, 439-40 (8th Cir. 1996), cert. denied, 520 U.S. 1273 (1997).

-5-

## A. Failure To Include and Define "Willfully" Misapply.

Robertson first argues the district court abused its discretion when it omitted the term "willfully" from the jury instructions. She contends that, because "willfully" is an element of the § 1163 offense of misapplying tribal property, "willfully" may not be omitted from the instructions and, in the criminal context, must be defined as meaning to act with the specific intent to do something the law forbids. As a result, Robertson posits, the jury never decided whether she acted with the *mens rea* necessary to convict her of the misapplying offense. We disagree.

"Willfully" is a word of many meanings. "Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. . . . As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" Bryan v. United States, 524 U.S. 184, 191 (1998). Because of the traditional rule that ignorance of the law is no excuse, proof beyond a reasonable doubt that the defendant knew that her conduct was in some way unlawful, rather than that it violated a known legal duty, is generally sufficient to establish a "willful violation" of a criminal statute. But there are exceptions to this principle: "highly technical [criminal] statutes that present[] the danger of ensnaring individuals engaged in apparently innocent conduct," such as provisions of the tax laws, require proof "that the defendant was aware of the specific provision of the tax code that he was charged with violating." Id. at 194-95.

Here, as in Jain, the statute, § 1163, prohibits willful conduct -- misapplication of tribal property -- rather than willful violation of a statute. Although for this type of penal statute, the *mens rea* element may not require proof that defendant knew her conduct was *unlawful*, we concluded in Jain that it does require more than proof of a "knowing" violation -- that is, knowledge of facts that constitute the offense -- to ensure that the statute does not criminalize innocent conduct. This heightened *mens rea* standard "only require[s] proof that [defendant] knew that [her] conduct was

-6-

*wrongful*, rather than proof that [s]he knew it violated a known legal duty." 93 F.3d at 440-41 (emphasis added); cf. United States v. Shively, 715 F.2d 260, 266 (7th Cir. 1983) ("not . . . every unauthorized loan by a bank officer is a willful misapplication of bank funds"), cert. denied, 465 U.S. 1007 (1984).

That is precisely what the district court charged in this case when it instructed the jury that, to find Robertson guilty of misapplying tribal property, it must find beyond a reasonable doubt that she used tribal funds or property "knowing that such use [was] unauthorized, or unjustifiable or wrongful." We upheld this same instruction on plain error review in United States v. Falcon, 477 F.3d 573, 578 (8th Cir. 2007). By convicting Robertson of misapplying tribal funds as defined in this instruction, the jury necessarily found that she acted with a culpable state of mind, that is, she knew her conduct was wrongful.[3] We reject the contention that, to adequately instruct on the *mens rea* element for a "willfully misapplies" violation, the instruction must use and separately define the word "willfully." "[D]efendants are not entitled to a particularly worded instruction when the instructions actually given by the trial court adequately and correctly cover the substance of the requested instruction." United States v. Casperson, 773 F.2d 216, 223 (8th Cir. 1985).

**B. Refusal To Give a Good Faith Defense Instruction.**

Robertson's defense at trial was that, even if she knowingly and intentionally violated LIHEAP procedures by approving her daughters' inaccurate applications, she did not violate § 1163 because she believed the households were eligible for LIHEAP benefits and only failed to apply for assistance herself because it would "look bad" to

---

[3]By including "unauthorized" conduct in its definition of this *mens rea* element, the district court may have included some types of innocent misconduct, but there was no objection to inclusion of that word, and the instruction as a whole adequately conveyed the notion of wrongful purpose.

receive benefits from her own program. Consistent with this theory, Robertson urged the district court to give the following proposed instruction:

> Good faith is a complete defense to the charge of embezzlement or theft from an Indian tribal organization if it is inconsistent with a willful criminal intent, which is an essential element. Evidence that Patricia Robertson acted in good faith may be considered by you, together [with] all the other evidence, in determining whether [or] not Ms. Robertson acted with a willful criminal intent to embezzle or steal from the Spirit Lake Tribe.

During the government's case in chief, the district court expressed doubt whether "[it can] be good faith when your client knowingly approved a false application." But the court deferred a final ruling on this issue and allowed defense evidence relating to the question of Robertson's alleged good faith. At the close of the evidence, the court declined to give the requested good faith instruction, explaining:

> Basically, if the Government has proven the essential mental attitude requisite for the offenses [as defined in the instructions given], by definition there is no good faith. And I think that the argument of the defendant can be made that the proof has failed as to those things, without the necessity for restating it in a good-faith instruction.

On appeal, Robertson argues the district court abused its discretion in not instructing the jury on good faith. For two distinct reasons, we disagree.

First, we have repeatedly stated that good faith is a defense to the federal crime of mail fraud because "one who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent." Brown, 478 F.3d at 928 (quotation omitted). Good faith may also be a defense to violations of statutes such as § 1163 that incorporate crimes which at common law required proof of criminal intent, such as "embezzlement" and "stealing," if the alleged good faith would negate the criminal

-8-

intent required by the statute.  See United States v. Goings, 313 F.3d 423, 427 (8th Cir. 2002) (18 U.S.C. § 1163); United States v. May, 625 F.2d 186, 189-90 (8th Cir. 1980) (18 U.S.C. § 641); United States v. Gregg, 612 F.2d 43, 50 (2d Cir. 1979) (18 U.S.C. § 660);  United States v. Bevans, 496 F.2d 494, 499-500 n.4 (8th Cir. 1974) (18 U.S.C. § 656); see generally Morissette v. United States, 342 U.S. 246, 266-69 n.28 (1952).[4]  Thus, Robertson's proposed instruction accurately stated a general principle:  "Good faith is a complete defense to the charge of [conviction] if it is inconsistent with a willful criminal intent, which is an essential element."

Because a defendant is entitled to instructions that adequately set forth the elements of the offense, but not to the specific instructions requested, we have repeatedly held that a district court does not abuse its discretion in declining to give a requested good faith instruction, so long as the instructions given adequately described the *mens rea* element of the offense.  See Brown, 478 F.3d at 928; Goings, 313 F.3d at 427; United States v. Cheatham, 899 F.2d 747, 751-52 (8th Cir. 1990); United States v. Sanders, 834 F.2d 717, 719 (8th Cir. 1987); accord United States v. Bowling, 619 F.3d 1175, 1183 (10th Cir. 2010) (noting the court en banc "joined the majority of courts" when it overturned a prior contrary panel decision); but see Casperson, 773 F.2d at 223-24, distinguished in Sanders and in Brown.  Here, as we have explained, the district court's definition of "misapply" -- to "voluntarily and intentionally use the funds or property of an Indian tribal organization knowing that such use is unauthorized, or unjustifiable or wrongful" -- adequately stated the *mens rea* element of that offense.  See United States v. Janis, 556 F.3d 894, 899 n.2 (8th Cir. 2009) ("intent to deprive the tribe of its property" is the *mens rea* requirement

---

[4]Borrowing language from existing criminal statutes, Congress enacted § 1163 in 1956 "to protect Indian tribal organizations . . . from the actions of dishonest or corrupt tribal officials . . . [by] punish[ing] persons holding positions of trust in tribal organizations who abuse their responsibilities by diverting tribal funds to their own pockets or those of their friends."  S. Rep. No. 2723, 84th Cong., 2d Sess., reprinted in 1956 U.S. Code Cong. & Admin. News 3841.

under § 1163). As the jury specifically found Robertson guilty of the misapplication offense, we need not consider whether the instruction defining "embezzle" adequately stated the *mens rea* element of that offense, a potentially troublesome issue.

Second, Robertson argues that the district court's failure to give her proposed good faith instruction violated the well-established principle that a criminal defendant is "entitled to a theory of defense instruction if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law." Casperson, 773 F.2d at 223. The defense stated was simply that, "Patricia Robertson acted in good faith." But good faith is a complete defense only if it is inconsistent with the *mens rea* element of the statute at issue.

The charge that Robertson "willfully misapplied" tribal funds focused on the intentional violation of her obligations as Coordinator of the Tribe's LIHEAP program. Knowing that LIHEAP funds could only be disbursed for the benefit of applicants who submitted sworn applications establishing their eligibility, Robertson knowingly approved applications by her daughters that failed to disclose the facts most essential to eligibility -- how many people were living in the household, and what was their combined income. Robertson was clearly aware of the importance of those disclosures because her formal duties included verifying income disclosures and personally reviewing numerous applications for completeness and accuracy. Her good faith theory ignored Robertson's responsibilities as LIHEAP program Coordinator. Focusing instead on her daughters' *receipt* of LIHEAP benefits, she argued that she did not act violate § 1163 because she believed those households in fact met the 150%-of-poverty-level-income eligibility criterion with her income included, and therefore tribal funds were disbursed to eligible recipients. This theory of defense was no defense to the offense charged. As we said in applying a comparable prohibition:

> To cause a loan to be made -- knowing that you are violating proper banking procedure . . . from the bank that employs you to a firm in which

you have a substantial financial interest -- to do all this and actively conceal what you are doing -- is willful misapplication of bank funds.

United States v. Thomas, 422 F.3d 665, 668 (8th Cir. 2005), quoting United States v. Angelos, 763 F.2d 859, 861 (7th Cir. 1985); accord United States v. Goad, 490 F.2d 1158, 1166 n.10 (8th Cir.) ("A union official cannot be acting in 'good faith' when not following his union's own procedures for authorizing expenditures."), cert. denied, 417 U.S. 945 (1974).

We have often noted that, while a defendant must identify some evidence to support a theory-of-defense instruction, this burden is "not onerous." United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997). Robertson argues this standard was satisfied here because there was some evidence, including her statement to the FBI agent, from which the jury might infer that Robertson honestly believed her daughters' households were eligible for LIHEAP benefits. If this specific claim of good faith had been a complete defense to the charged violation of § 1163, we acknowledge that the argument for some sort of good faith defense instruction would have been much stronger. But even then, Robertson would not be *entitled* to a theory-of-defense instruction. As we said in United States v. Christy, 647 F.3d 768, 770 (8th Cir. 2011), "Even where the court declines to give an instruction on a theory of defense that is supported by the evidence, there is no error if the instructions . . . afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it."

For these reasons, the district court did not abuse its discretion in declining to give the proposed good faith instruction but permitting Robertson to introduce evidence that supported her claim of good faith and argue its significance to the jury.

### III. The Special Condition of Probation.

Relying on our decisions in United States v. Prendergast, 979 F.2d 1289 (8th Cir. 1992), and United States v. Bass, 121 F.3d 1218 (8th Cir. 1997), Robertson argues that the district court abused its discretion when it imposed, as a special condition of her probation, that she "totally abstain from the use of alcohol [and] submit to drug/alcohol screening at the direction of the U.S. Probation Officer to verify compliance." This contention is without merit.

First, unlike Prendergast and Bass, there is ample evidence to support a total alcohol ban in this case. Robertson has three alcohol-related offenses, including two recent offenses -- public intoxication in January 2009 and driving under the influence in October 2010 when, according to police reports, her grandchildren were in the car she was driving. We have repeatedly affirmed total bans on alcohol consumption when *either* the defendant's history and characteristics *or* the crime of conviction supported the restriction. See United States v. Forde, 664 F.3d 1219, 1222-23 (8th Cir.), cert. denied, 132 S. Ct. 2789 (2012). Second, the district court did not fail to make an individualized inquiry as to the propriety of the prohibition, which distinguishes the record in this case from United States v. Wisecarver, 644 F.3d 764, 775-76 (8th Cir.), cert. denied, 132 S. Ct. 533 (2011). When Robertson objected to the total ban at sentencing, the court responded by specifically highlighting her 2009 and 2010 alcohol-related convictions. Third, we reject Robertson's contention that her conditions of probation are ambiguous; the district court made clear at sentencing that the unambiguous, more restrictive special condition controls the less restrictive standard condition prohibiting excessive use of alcohol. Finally, we consider it significant that the district court, varying downward from the advisory range, sentenced Robertson to 36 months probation, with the first six months in home confinement at her home on the Spirit Lake Reservation. Tribal law prohibits alcohol consumption by Indians within the Reservation boundaries. It is reasonable to require

Robertson to comply with tribal law while confined to her home as a more lenient alternative to incarceration.  Cf. U.S.S.G. § 5F1.2, comment. (n.2).

The judgment of the district court is affirmed.

_____