# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-2302

———————————————

United States of America

*Plaintiff - Appellee*

v.

Michael Anthony Garrett

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: February 16, 2018
Filed: August 2, 2018

——————————

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Shortly after midnight on December 28, 2014, Michael Garrett drove a minivan into the parking lot of the Grand Slam convenience store in Kansas City, Missouri. About 45 minutes later, off-duty Police Officer Michael Hamlett approached the van, found Garrett sleeping, and called for police assistance after attempting to wake him. Officer Douglas Davidson arrived, entered the van through an unlocked door, and found a handgun lying on the floorboard. Garrett was arrested for being a felon in

possession of a firearm; search of the vehicle uncovered a mason jar with five plastic baggies containing a total of ten grams of marijuana and a black digital scale with green residue on it. After a three-day trial, a jury convicted Garrett of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). The district court[1] sentenced Garrett to 240 months imprisonment. Garrett appeals his conviction and sentence. We affirm.

## I. A Theory-of-Defense Instruction Issue.

At trial, Garrett admitted that he possessed the marijuana and scale but argued to the jury that the government failed to prove that he possessed the marijuana with intent to distribute and knowingly possessed the gun in furtherance of a drug trafficking crime. Garrett based this defense primarily on the following evidence:

Officers Hamlett and Davidson testified that Garrett remained parked at a Grand Slam gas pump for forty minutes, was dazed and confused when awakened, and appeared intoxicated to Hamlett. The dash-cam video from Davidson's vehicle showed Garrett collapsing after exiting the minivan. The officers called for an ambulance (Garrett refused medical treatment when it arrived). The paddy wagon video showed him drifting in and out of sleep after being arrested and losing consciousness while attempting to exit that vehicle. A pharmacist testified that Garrett had current prescriptions for OxyCodone, Xanax, and Codeine. A detention center employee testified that, after his arrest, Garrett had a second degree burn on his thigh that correlated with a hole found in his pants and a burn mark found on the

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

seat of the minivan where he had been sleeping. The inference suggested was that Garrett smoked a "blunt" sold by Grand Slam that he laced with marijuana.

Before the final instructions conference, Garrett proposed the following theory-of-defense instruction:

> One of the issues in this case is whether the defendant was intoxicated due to taking a drug or drugs at the time the acts charged in the Indictment were committed. Being under the influence of a drug, even one taken for medical purposes, provides a legal excuse for the commission of a crime if the effect of the drug negates the mental state required by the charged offense. Evidence that the defendant acted while under the influence of drugs may be considered by you, together with all the other evidence, in determining whether or not he did in fact have an intent to distribute marijuana and an intent to possess a firearm in furtherance of possession of marijuana with intent to distribute.

Initially inclined to give the proposed instruction, the district court heard argument after the close of evidence and declined to give it, concluding that "a reasonable person would not conclude that the evidence supports the defendant's position so as to warrant the giving of the intoxication instruction." On appeal, Garrett argues the district court erred in refusing to give his requested instruction because it was an accurate statement of the law amply supported by the evidence at trial.[2]

It is well established "that a criminal defendant is entitled to a theory of defense instruction if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law." United States v. Robertson, 709 F.3d 741, 747 (8th Cir. 2013); see Mathews v. United States, 485 U.S. 58, 63 (1988). The

___

[2]Garrett argues the district court violated his "due process right to present a defense." But this is not a constitutional issue. See United States v. Christy, 647 F.3d 768, 770 (8th Cir. 2011).

word "defense" in this context includes evidence that negates an affirmative element of the government's case, such as the *mens rea* element of the charged offense. 709 F.3d at 746. It is widely accepted by this court and others that "[a] defendant charged with a specific intent crime is entitled to an intoxication instruction when the evidence would support a finding that [the defendant] was in fact intoxicated and that as a result there was a reasonable doubt that he lacked specific intent." United States v. Kenyon, 481 F.3d 1054, 1070 (8th Cir. 2007) (quotation omitted).[3] To warrant an instruction, there must be "some evidence" that Garrett "was drunk enough to completely lack the capacity to form the requisite intent." Id., quoting United States v. Nacotee, 159 F.3d 1073, 1076 (7th Cir. 1998); see Stenzel, 261 F. at 163 ("incapable of entertaining" the specific intent required). We conclude the district court did not err in refusing to give the proposed instruction for three reasons.

1.   The proposed instruction did not correctly state the law. First, the instruction told the jury that Garrett lacked specific intent to distribute if he was intoxicated *at the time of arrest*. In physical or sexual assault cases such as Kenyon, when the intoxication defense most commonly arises, there need only be some evidence that defendant was sufficiently drunk or high when he committed the assault. See United States v. Fay, 668 F.2d 375, 377-78 (8th Cir. 1981) (error not to give intoxication instruction when evidence defendant intoxicated at the time of the assault may have negated intent to do bodily harm). But to prove possession with

---

[3]The limitation of this defense to specific intent crimes has rather ancient roots. See Stenzel v. United States, 261 F. 161, 163 (8th Cir. 1919). The limitation has generated substantial litigation as to whether a crime required proof of specific intent, see Kenyon, 481 F.3d at 1069-70, and whether at least some "general intent" crimes should also be subject to an intoxication defense. We need not enter this thicket because it is both obvious and undisputed in this case that the offenses in question, possession *with intent to distribute* marijuana (Count Two) and possession of a firearm *in furtherance of* a drug trafficking crime (Count Three) are crimes requiring proof of the requisite specific intent. See United States v. Jackson, 213 F.3d 1269, 1291-92 (10th Cir. 2000).

intent to distribute drugs that have not yet been distributed, the government can prove the requisite specific intent at any time after the defendant acquired possession until his arrest possessing the unsold drugs. An intoxication defense instruction that does not explain this to the jury does not accurately state the law. Second, instructing the jury that it may consider "that the defendant acted while under the influence of drugs" is not an accurate statement of the intoxication defense -- that defendant *completely lacked* the capacity to form the requisite intent.

2. The district court concluded there was only speculative evidence that Garrett was intoxicated or under the influence of prescription medications or marijuana at the time of his arrest. We agree. See United States v. Phelps, 168 F.3d 1048, 1056 (8th Cir. 1999) (intoxication instruction that "is based on mere speculation" properly refused). Moreover, there was a total lack of evidence negating Garrett's specific intent to distribute when he acquired possession of the marijuana, packaged it in distribution-sized baggies, and set out with the marijuana baggies and a firearm on a drive that ended at the Grand Slam gas pump. Garrett did not testify at trial, and there was no other evidence as to how the marijuana and firearm came to be in the minivan with Garrett. No amount of evidence of intoxication *at the time of arrest* would negate the existence of intent to distribute marijuana and to facilitate that drug trafficking crime with a firearm when steps reflecting that specific intent had been taken previously. See Jackson, 213 F.3d at 1293 (habitual crack use does not negate possession with intent to distribute even if defendant was under the influence during some transactions).

3. "Even where the court declines to give an instruction on a theory of defense that is supported by the evidence, there is no error if the instructions as a whole, by adequately setting forth the law, afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it." Christy, 647 F.3d at 770. Here, after ruling that it would not give the proposed intoxication instruction, the district court stated:

It's the Court's ruling that the defense can argue within the parameters of the law and the instruction that any proper inference or evidence of intoxication or drug use, whether prescribed or not, may be considered by the jury . . . during their determination whether or not the defendant did, in fact, have the requisite knowledge and intent.

The court then instructed the jury, without objection, as to the knowledge and intent elements of all three offenses, and defense counsel argued at length that Garrett's prescription medications and marijuana use prevented him from knowingly possessing the firearm, or intending either to distribute marijuana or to facilitate a drug trafficking crime. As in Christy, there was no error.

## II. Two Fair Trial Issues.

**A. A Brady Issue.** At trial, Detective Kris Rutherford testified that a warrant search of Garrett's residence in December 2013 uncovered mason jars, 872 ecstasy pills in plastic bags, marijuana, and a digital scale with marijuana residue. Police Officer Dylan Passinese testified that, during the warrant search, he observed mason jars, plastic bags, and marijuana and was present at an interview when Garrett made a statement about buying a large quantity of pills from an Asian male. The district court admitted this evidence under Rule 404(b) to show Garrett's knowledge and intent to distribute marijuana, instructing the jury it could only be considered for that purpose. After trial, the government produced lab reports showing that some of the pills were a mixture of cocaine and caffeine and some were a mixture of methamphetamine and caffeine, but none contained the Schedule 1 controlled substance commonly known as ecstasy, methylenedioxymethamphetamine (MDMA). Garrett moved for a new trial, arguing the prosecution had suppressed evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). The district court denied a new trial, concluding the lab reports were not material.

To establish a claim under Brady, Garrett must establish that (1) the government suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the outcome of the trial. Masten v. United States, 752 F.3d 1142, 1146 (8th Cir. 2014). For evidence to be material, there must be a "reasonable probability that had it been disclosed, the result of the proceeding would have been different." United States v. Robinson, 809 F.3d 991, 996 (8th Cir. 2016).

Garrett argues that lab reports showing the pills were a mixture of various substances would show his ignorance of their contents, negating the inference of knowledge and corroborating the defense that he was a habitual user, not a drug dealer. The district court concluded that the report may have had some impeachment value but would not have affected the purpose for which the Rule 404(b) evidence was admitted, to show that Garrett had knowledge and intent to distribute illegal substances. We agree. The 404(b) evidence that Garrett engaged in drug distribution before the 2013 search warrant was executed was strong, regardless of the identity of the pills or Garrett's knowledge of their identity. There was no abuse of discretion in denying a new trial because there was no reasonable probability that the result of the proceeding would have been different had the lab reports been produced.

**B. Closing Argument Prosecutorial Misconduct.** Garrett objected to seven of the prosecutor's remarks during closing argument. The district court sustained four objections and repeatedly instructed the jury that arguments by lawyers are not evidence. Garrett nonetheless argues the prosecutor "undermined [his] right to a fair trial" by repeatedly misstating the evidence and in one remark misrepresenting his theory of defense.

Garrett unsuccessfully objected to two of the prosecutor's statements relating to Officer Passinese's testimony regarding the 2013 warrant search interview: "Regarding [Garrett's] intent [at the time of arrest], that same man has admitted in the past to be engaged in narcotics trafficking," and "Then we have the defendant's

admission that he made to Officer Passinese. I'm not going to mince words. The defendant's a drug dealer." Garrett objected to both, "That's not the evidence." The district court ruled, "The jury will remember the evidence." The third remark to which objection was not sustained was the prosecution's statement that, "[u]nder defendant's theory, the defendant was so under the influence of drugs, so seriously intoxicated . . . that he did not know that there was a gun right next to him; that he did not know about the multiple bags of marijuana sitting on the passenger side floorboard." Garrett argues this was a misstatement of his theory of defense, which was that Garrett had no intent to distribute, not that he had no knowledge of the marijuana. The court overruled this objection, which in our view was completely without merit, explaining "the jury [will] recall the evidence it's heard during the trial."

"The district court has broad discretion in controlling closing arguments, and we will not reverse absent an abuse of discretion. To obtain a reversal . . . the defendant must show that (1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." United States v. Mullins, 446 F.3d 750, 757 (8th Cir. 2006). We conclude the district court did not abuse its discretion because (i) the remarks were related to the evidence and not "likely to inflame bias in the jury," id. at 759; (ii) the remarks were not so prejudicial as to deprive Garrett of a fair trial; (iii) the district court's instruction that closing arguments are not evidence "serve[d] to alleviate any risk of prejudicial impact," United States v. Eagle, 515 F.3d 794, 806 (8th Cir. 2008); and (iv) we agree with the district court that the evidence of Garrett's guilt was overwhelming. See Mullins, 446 F.3d at 757.

## III. A Sentencing Issue.

Garrett argues that the district court erred by sentencing him as a career offender under the Sentencing Guidelines because he does not have "at least two prior

felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). We review this issue *de novo*. United States v. Harrison, 809 F.3d 420, 425 (8th Cir. 2015).

At sentencing, the district court found that Garrett is a career offender because he has two prior felony convictions that were crimes of violence under § 4B1.1, a Missouri conviction for first degree domestic assault and a Kansas conviction for attempted aggravated assault of a law enforcement officer. This resulted in an advisory guidelines range of 360 months to life imprisonment. The district court varied downward and sentenced Garrett to 240 months imprisonment. The court explained:

> although the court . . . found [Garrett] to be a career offender[, t]he court did vary downward and not utilize th[e] advisory guidelines in that respect. If it was inappropriate for the court to apply the career offender guideline provisions, it wouldn't impact the sentence imposed today. The sentence is imposed based on this particular defendant, this particular offense, and his history and the factors under 18 U.S.C. § 3553.

On appeal, Garrett argues the district court erred because he does not have two predicate crime-of-violence convictions. First, he argues the Missouri conviction for first degree domestic assault does not count under the rule of lenity as applied in King v. United States, 595 F.3d 844 (8th Cir. 2010): two of his six prior sentences cannot be counted in calculating his Criminal History Category under § 4A1.1(c); an offense must be counted separately under § 4A1.1 to be counted under § 4B1.1, see § 4B1.2(c); and therefore the rule of lenity requires that the two crimes of violence not be counted under § 4A1.1 and § 4B1.1. 595 F.3d at 850-51. The district court rejected this argument because it would lead to an absurd result -- a *more lenient sentence* because Garrett has a *greater criminal history*. That reasoning is

consistent with this court's prior interpretation of the rule of lenity as applied in King. See Donnell v. United States, 765 F.3d 817, 820 (8th Cir. 2014).

Second, Garrett argues that the Kansas attempted aggravated assault on an officer conviction does not count because the offense is not categorically limited to the generic definition of an attempt crime: we often look to the Model Penal Code in defining offenses enumerated in the Guidelines. See, e.g., United States v. Kosmes, 792 F.3d 973, 977 (8th Cir. 2015). The Model Penal Code defines an attempt as requiring "a substantial step" towards completion of the offense, whereas under Kansas law, attempt is more broadly defined as requiring only "an overt act toward the perpetration of the crime." The government responds that the definition of attempt in the Kansas statute when Garrett committed the assault offense "fit[s] easily" within the definition of criminal attempt in the Model Penal Code, comparing K.S.A. 2006 Supp. 21-3301(a), with Uniform Model Penal Code § 5.01.

Even if the district court erred in concluding that Garrett's two prior offenses were crimes of violence that qualify Garrett as a career offender, we conclude any error was harmless. When the "district court's detailed explanation for the sentence imposed makes clear that the judge based the sentence he or she selected on factors independent of the Guidelines, the error may be harmless." United States v. McGee, 890 F.3d 730, 737 (8th Cir. 2018). This rule applies when the district court varies from the challenged advisory guideline sentence, makes clear it has considered the 18 U.S.C. § 3553 sentencing factors, and states that it would apply the same sentence regardless of the advisory range. See id. at 737; United States v. McGrew, 846 F.3d 277, 282 (8th Cir 2017); United States v. Dace, 842 F.3d 1067, 1069 (8th Cir. 2016).

Garrett argues the district court's "terse and entirely generic statement," without announcing an alternative guideline calculation, is insufficient to establish that its career offender guidelines error was harmless. We disagree. The court explicitly stated that it "found [Garrett] to be a career offender [but did] not utilize

th[e] advisory guidelines in that respect." It acknowledged that Garrett's "compelling and interesting arguments . . . brought out many aspects of [Garrett's] past that [the court found] relevant for fashioning this sentence." And it engaged counsel in extensive discussion regarding the circumstances of the present offense, the circumstances of Garrett's prior offenses, and the § 3553 factors. In these circumstances, any error in determining that Garrett is a career offender was harmless.

The judgment of the district court is affirmed.

_____