# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1129
No. 22-1131

_____

United States of America

*Plaintiff - Appellee*

v.

Kenny Eugene Smart

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa

_____

Submitted: October 20, 2022
Filed: February 21, 2023

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Kenny Eugene Smart of being a felon in possession of a firearm and possessing a firearm in furtherance of a drug trafficking crime. 18 U.S.C.

§§ 922(g)(1), 924(a)(2), 924(c)(1)(A)(i). The district court[1] denied his motion for a new trial in a thirty-page Order and sentenced Smart as an armed career criminal to 360 months' imprisonment. See 18 U.S.C. § 924(e). The court also revoked Smart's supervised release and imposed a consecutive fifty-four month sentence. Smart appeals his conviction and sentence, arguing there was insufficient evidence to convict him of the firearm offenses; the district court committed evidentiary errors and improperly instructed the jury; the government committed Brady violations; his trial counsel was ineffective; and the district court erred in sentencing him as an armed career criminal and abused its discretion in revoking supervised release. We affirm the conviction. Based on an intervening armed-career-criminal decision, we remand for resentencing.

## I. Sufficiency of the Evidence

Smart argues the evidence was insufficient to convict him of actual or constructive possession of a firearm in furtherance of a drug trafficking crime. "We review the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Harris-Thompson, 751 F.3d 590, 598 (8th Cir.), cert. denied, 574 U.S. 965 (2014).

At trial, law enforcement agents testified that in November 2020 they executed a search warrant at 1121 Clark Street in Des Moines, a duplex rented by Elisa Harper. The warrant was based on probable cause to believe the residence was used to manufacture and distribute crack cocaine. The entry team stopped Smart and his girlfriend, Jennifer Dibble, as they exited a small bedroom where a loaded Ruger pistol was found "in plain view on the floor." A criminalist testified that DNA swabs

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Court for the Southern District of Iowa.

from the firearm matched Smart's DNA. Smart was found with $1240 cash. He inquired about "his tablet," which was found near the firearm.

Charles Loggins, Smart's uncle, testified that he saw Smart cook crack cocaine at Loggins's residence on multiple occasions. Loggins testified that Smart often brought the pistol found in the Clark Street bedroom and put it on the kitchen counter while he cooked crack. Heidi Kipnusu, Loggins's live-in girlfriend, testified she watched Smart cook crack cocaine at her house and saw him with a handgun on multiple occasions. Both Loggins and Kipnusu testified that Smart sold them crack cocaine. Lometa Welch testified that she purchased crack cocaine from Smart at the Clark Street residence "at least fifteen times." Early in the morning on the day of the warrant search, she went to purchase crack cocaine from Smart and saw him asleep in the bedroom which he later exited. Welch glimpsed the pistol on the floor, within Smart's reach.

The government also introduced recorded jail calls as evidence of Smart's consciousness of guilt. In one, Smart told Jennifer Dibble "it would be beautiful if your brother [Avery] would say he was missing something, a weapon of some type." In a subsequent call, Smart learned that Avery had not said anything when questioned. Smart said to Avery, "I'm trying to figure out why you didn't listen to your sister."

Brian Larson, Kipnusu's brother, testified that he was moved into Smart's cellblock shortly before Smart's trial began on June 7, 2021. Smart approached Larson and told him to "start making telephone calls right now and to get [Kipnusu] out of state or to [Larson's] wife's house." If Kipnusu testified, Larson "was going to be the one paying the price." On June 6, when Larson told Smart he could not reach Kipnusu, Smart said "he was going to get to her through [Larson]." Larson reported to a jail officer he did not feel safe in his housing unit.

-3-

The district court concluded the trial evidence demonstrated Smart's constructive possession of the handgun in furtherance of drug trafficking activity. "The evidence does not weigh against the jury's verdicts and no miscarriage of justice has occurred." On appeal, Smart first argues the court erred in denying his motion for judgment of acquittal because the DNA evidence was "scant" and the government otherwise "relied solely upon the testimony of uncorroborated, unreliable civilian witnesses." However, as Smart acknowledges, "it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Dunn, 723 F.3d 919, 925 (8th Cir. 2013). Here, the testimony of Loggins, Kipnusu, and Welch alone, if credited by the jury, was sufficient evidence that Smart possessed the Ruger handgun in furtherance of a drug trafficking crime. There was no error denying judgment of acquittal.

Smart further argues the district court abused its discretion in denying his motion for a new trial because the evidence weighed heavily against the verdicts and a miscarriage of justice may have occurred. See Harris-Thompson, 751 F.3d at 600 (standard of review). We disagree. "Motions for new trials based on the weight of the evidence generally are disfavored. . . . A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. Vore, 743 F.3d 1175, 1181 (8th Cir. 2014) (cleaned up). After careful review of the record, we conclude there was no abuse of discretion. The evidence weighed heavily in favor of, not against, the jury's verdict. There was no miscarriage of justice.

## II. Evidentiary Issues

**A. Smart's Prior Convictions.** Prior to trial, Smart declined to stipulate to his status as a felon, his knowledge of that status, and the admissibility of two prior felony convictions. See Old Chief v. United States, 519 U.S. 172, 191 (1997). The government filed a motion *in limine* to admit evidence under Rule 404(b) of the

-4-

Federal Rules of Evidence, namely, his 2004 state conviction for possession with intent to deliver and conspiracy to deliver crack cocaine and his 2006 federal conviction for being a felon in possession of a firearm. The district court granted the motion over Smart's objection and overruled his trial objection to the government's Rule 404(b) evidence. The court concluded that this evidence was admissible on the felon in possession count "as substantive evidence of Smart's status as a felon and his knowledge of that status," and that it was relevant substantive evidence of possession in furtherance of cocaine distribution to demonstrate his knowledge and intent to distribute. We agree.

Rule 404(b) provides that evidence of another crime "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" -- in other words, to prove propensity to commit crimes -- but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." To be admitted under Rule 404(b), the evidence must be "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than in prejudicial effect." United States v. Bragg, 44 F.4th 1067, 1073-74 (8th Cir. 2022) (citation omitted). In this circuit, Rule 404(b) is a rule of inclusion. We review the admission of Rule 404(b) evidence for abuse of discretion. See United States v. Drew, 9 F.4th 718, 722 (8th Cir. 2021), cert. denied, 142 S. Ct. 1159 (2022).

Prior to trial, the government sought to introduce evidence of Smart's prior convictions to show his "knowledge motive, and intent to possess a firearm and to possess a firearm in furtherance of distribution of cocaine," and to show his status as a convicted felon and knowledge of that status, elements of the felon in possession offense that he refused to stipulate. On appeal, ignoring the status issues, Smart argues "[t]here was no legitimate purpose in offering this evidence, other than propensity evidence." We have "routinely affirmed the use of past gun possession

offenses to prove the element of knowing possession in violation of 18 U.S.C. § 922(g)(1)." Bragg, 44 F.4th at 1074.

Here, at trial, defense counsel did not object that any specific 404(b) testimony created a risk of unfair prejudice that outweighed its probative value. The defense simply adhered to its pretrial position that *no* 404(b) evidence should be admitted. When the district court adhered to its pretrial ruling, defense counsel agreed that the court's comprehensive limiting instruction was appropriate. As in United States v. Turner, 781 F.3d 374, 391 (8th Cir.), cert. denied, 577 U.S. 889, cert. denied, 577 U.S. 980 (2015), given the overwhelming evidence supporting the jury's verdict against Smart, any error in the admission of these prior convictions was harmless. Evidence of Smart's prior convictions for similar conduct "did not have substantial and injurious effect or influence in determining the jury's verdict." United States v. Mejia-Uribe, 75 F.3d 395, 399 (8th Cir.), cert. denied, 519 U.S. 855 (1996) (quotation omitted). There was no abuse of discretion in denying a new trial on this ground.

**B. Smart's Jail Calls.** Smart next argues the district abused its discretion in admitting the recorded jail phone calls. He argues the calls "provided no evidence Smart was eliciting false testimony at trial, no evidence about hiding evidence, and no evidence about anything incriminating." Therefore they should have been excluded as irrelevant and unfairly prejudicial because they disclosed Smart was held in jail before trial. See Fed. R. Evid. 403. This contention is without merit.

The government offered this evidence as probative of consciousness of guilt. We agree with the district court that "a jury could infer Smart attempted to persuade his girlfriend to direct her brother to tell police he lost a weapon. These statements are probative of consciousness of guilt." Smart declined to stipulate to admission of the recordings, which would have eliminated the need for foundation explaining how they were obtained. The recordings as admitted redacted any reference to Smart being incarcerated. Smart did make a reference to Jennifer about a "new detention

-6-

hearing," but any prejudice from that vague statement is outweighed by the probative value of the substance of the phone calls. There was no abuse of the district court's evidentiary discretion in denying a new trial on this ground. See United States v. Cross, 888 F.3d 985, 990 (8th Cir.), cert. denied, 139 S. Ct. 351 (2018).

**C. Welch and Kipnusu Prior Theft Convictions.** Government witness Heidi Kipnusu was convicted in 2002 of theft in the fourth degree. Lometa Welch had prior theft convictions from 1989 and 2006. Smart argues the district court abused its discretion when it granted the government's motion to exclude evidence of the theft convictions because they show a "life-long pattern of deceit" by the witnesses that would have aided his effort to discredit them.

Evidence of a witness's prior conviction is admissible to attack her character for truthfulness if the crime involved "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). We do not characterize theft as "a crime involving 'dishonesty or false statement' within the meaning of Rule 609 (a)(2)." United States v. Yeo, 739 F.2d 385, 387 (8th Cir. 1984). Here, in ruling the convictions inadmissible, the district court relied on a lack of evidence that any of the thefts were accomplished by deception. On appeal, Smart simply argues that some courts consider theft to be a crime involving deception and therefore the evidence should have been admitted. This is hardly a showing of abuse of discretion. Moreover, if more than ten years has passed since the conviction or the witness's release from confinement, as in this case, it is not admissible unless "its probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609 (b). Such convictions "should be admitted very rarely and only in exceptional circumstances." United States v. Stoltz, 683 F.3d 934, 940 (8th Cir. 2012) (quotation omitted). There was no abuse of discretion in excluding the convictions and denying a new trial on this ground.

**D. Brian Larson's Testimony.** Smart argues that the district court erred in admitting the testimony of Brian Larson regarding his eve-of-trial interaction with Smart in their jail cellblock because the defense "was not provided adequate time to investigate, and contest, the evidence." The government, the district court, and Smart's trial counsel learned from the Marshals Service that Smart had "threatened harm [to] a fellow inmate at the Polk County Jail" on June 7, 2021, just before the start of trial. The government advised it was investigating and might call a witness regarding the threats. Defense counsel objected to this eleventh hour evidence. "If they can develop the case for witness tampering, that's a separate charge that would require discovery and due process." Expressing "grave concern about this defendant's attempts to undermine the administration of justice," the court ruled it:

> will allow the Government to have an offer of proof prior to the presentation of evidence in regards to any allegations of attempts to influence witnesses . . . . The defendant will have the opportunity to cross-examine at that time. The Court will make a finding as to whether or not there's sufficient evidence to put that in front of the jury.

Subsequently, as defense counsel requested, the government shared jail surveillance footage showing an interaction between Smart and Larson shortly before Larson reported feeling unsafe, an interview with Larson, and phone calls between Larson and his wife discussing Smart's threats. At the start of the second day of trial, defense counsel "strenuously object[ed] to bringing in this witness at this late time" with no opportunity to do discovery and "our own investigation." Noting the government would not introduce video evidence showing the in-custody interactions, the district court ruled that testimony by Larson "in regards to attempts to intimidate a witness is relevant to an issue at trial. . . . The defendant generated this evidence by his own conduct, and the timeliness issue is, therefore, not grounds to prohibit the Government from introducing this probative evidence." Smart did not move for a continuance. Larson testified for seven transcript pages later that day.

-8-

On appeal, Smart argues the district court erred because allowing such testimony without giving the defense time to investigate is "the definition of unfair surprise" that violates a defendant's Fifth Amendment right to due process. Trial counsel was not prepared to cross examine Larson, whose testimony again reminded the jury that Smart was in custody prior to trial. As Smart acknowledges, evidence of threats against witnesses is generally admissible to show consciousness of guilt and as direct evidence of the crime charged, even if prejudicial. See United States v. Skarda, 845 F.3d 370, 377-78 (8th Cir. 2016); United States v. Castleman, 795 F.3d 904, 915 (8th Cir. 2015), cert. denied, 577 U.S. 1109 (2016). Smart's due process contention is without merit because the timing issue was generated entirely by Smart's conduct, the district court and the government made reasonable efforts to mitigate any trial prejudice, and Smart did not move for a continuance. A criminal defendant may not threaten a family member of a government witness on the eve of trial and then cry unfair surprise when the government calls that person to testify.

Smart further challenges Jury Instruction No. 6, which permitted the jury to consider whether an attempt to influence a witness shows consciousness of guilt, because Larson's testimony was wrongly admitted. As Larson's testimony was not wrongly admitted, the jury instruction was not an abuse of discretion.

**E. The Posed Photograph.** During the warrant search, the police encountered Smart and ordered him to the floor. Money fell from his pockets. He asked for the money back after he was handcuffed. An officer picked up the money, placed it on Smart's lap, and took a photo showing him handcuffed on a couch with money strewn on his lap. At trial, a member of the search and entry team identified the photo, and it was admitted over Smart's foundation objection. On appeal, Smart argues the district court abused its discretion in admitting a highly prejudicial photo because it does not depict a correct likeness of the scene it purported to represent. The government argues the photograph is relevant because it depicts Smart wearing the clothing shown in the police officer's video of the search, seated "near the bedroom

where he was encountered," and the cash found in his pockets was consistent with drug trafficking.

"In order to be admissible, a photograph must be shown to be an accurate representation of the thing depicted as it appeared at the relevant time." Schmidt v. City of Bella Villa, 557 F.3d 564, 569 (8th Cir. 2009). In Schmidt, we held that, where a proffered photograph was taken after the incident at issue by a person with no personal knowledge of whether it was an accurate representation of what was depicted at the relevant time, there was "no abuse of discretion in the district court's decision to strike the photograph for lack of foundation." Id.

Here, there was no lack of foundation. The photograph was taken at the relevant time by a person with personal knowledge of what it depicted. Smart's complaint on appeal is that the photograph's limited probative value was outweighed by the unfair prejudice of a posed photograph. See Fed. R. Evid. 403. That objection was not made at trial, so we review for plain error. We agree the probative value of the photograph is relatively low. The police video depicted the information the government claims is relevant, and a police officer testified that Smart exited the bedroom with money falling from his pockets.

In United States v. Jefferson, 975 F.3d 700, 706 (8th Cir. 2020), cert. denied, 141 S. Ct. 2820 (2021), we held that it was not an abuse of discretion warranting a new trial to admit a photograph showing the defendant handcuffed during a warrant search. Thus, any error admitting this photograph after a showing of proper foundation, and subject to defense counsel's cross examination, was hardly plain. Moreover, any error did not affect Smart's substantial rights and was therefore harmless. There was substantial evidence of Smart's guilt, and the photograph, even if posed, was not instrumental in establishing his guilt. See United States v. McPike, 512 F.3d 1052, 1055 (8th Cir. 2008).

### III. Jury Instruction Issues

On appeal, Smart argues the district court abused its discretion when it rejected two jury instructions he requested. "A defendant is entitled to an instruction explaining his defense theory if the request is timely, the proffered instruction is supported by the evidence, and the instruction correctly states the law." United States v. Gianakos, 415 F.3d 912, 920 (8th Cir.), cert. denied, 546 U.S. 1045 (2005) (citation omitted). We will affirm if "the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Janis, 995 F.3d 647, 650 (8th Cir.), cert. denied, 142 S. Ct. 483 (2021) (quotation omitted).

**A. Addict-Informer Instruction.** Smart argues the district court erred in denying his request for an addict-informer instruction, the Third Circuit's model instruction regarding the credibility of a witness who used drugs when the events took place or at the time of trial. We have not "adopted the rule that an addict-informer instruction must be given if requested." United States v. Gladney, 474 F.3d 1027, 1032 (8th Cir. 2007). Rather, we leave this issue to the district court's discretion, depending on the circumstances of each case. "The presence of any of the following factors may make an addict-informer instruction unnecessary: (1) a dispute as to whether the informant is actually an addict, (2) cross-examination concerning the informant's addiction, (3) an instruction alerting the jury to view the informant's testimony with care, and (4) corroboration of the informant's testimony." Id.

Here, Smart's trial counsel cross-examined Loggins, Kipnusu, and Welch regarding their drug use during the dates in question. Their testimony was reinforced by the government's other evidence. And the district court modified our model credibility instructions to include, "In deciding what testimony to believe, consider . . . the extent to which drug use or other conditions affected the ability of the witnesses to perceive the events testified about." As in Gladney, we conclude the

-11-

district court did not abuse its discretion in refusing to give a standalone addict-informer instruction.

**B. Mere Presence Instruction.**  Smart argues the district court erred when it refused to give a "mere presence" instruction.  This instruction is unnecessary when the instructions taken as a whole adequately convey that more than mere presence is required to convict, making the requested instruction "largely duplicative."  Drew, 9 F.4th at 725; see United States v. Franklin, 960 F.3d 1070, 1072 (8th Cir. 2020). Here, the instructions required the government to prove that "the defendant knowingly possessed a firearm," that possession could be either actual or constructive, and defined constructive possession as having "both the power and the intention at a given time to exercise dominion or control over a thing."  The instructions thus required the jury to find that Smart *knew* he was in possession of a firearm, not that he was merely in the presence of it.  As the instructions as a whole required the government to prove more than mere proximity to the gun, the district court did not abuse its discretion in refusing to give the requested instruction.

## IV. The Brady Issues

Smart argues the district court erred in denying his motion for a new trial because the government twice suppressed materially favorable evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).  To establish a claim under Brady, Smart must establish that the government (1) suppressed evidence; (2) that was favorable to him; and (3) material to the outcome of the trial.  See United States v. Garrett, 898 F.3d 811, 816 (8th Cir. 2018), cert. denied, 139 S. Ct. 1226 (2019).  We review this issue for abuse of discretion.  See United States v. Delgrosso, 852 F.3d 821, 827 (8th Cir. 2017).  The district court found the government's failure to disclose this evidence "unacceptable" but nonetheless denied a new trial.

**A. Pole Camera Video Footage.**  Welch  testified she went to 1121 Clark Street shortly before the search warrant was executed to purchase crack cocaine from Smart, but he was asleep in the same back bedroom identified as the bedroom from which Smart exited during the police raid.  She testified that when she looked into the bedroom he was sleeping in, the lights were off but she had "a glimpse of the firearm."  "[I]t was in his reach, within his vicinity."  She also testified she was handed drugs "from Lisa Harper."  Harper was not at 1121 Clark Street during the execution of the search warrant.  She was interviewed later but was not called as a witness by either side.

In the motion for new trial, Smart stated that the government did not disclose until after the trial, video footage from the Clark Street residence's pole camera on the morning of the warrant search.  In a pretrial interview with police officers made available to the defense, Welch had stated she was at the residence "maybe a half-hour" before the police executed the search warrant.  She came in a burgundy Ford Focus and had "another girl with her" who also purchased drugs.  At trial, defense counsel did not question Welch about the timing of when she went to the house, whom she went to the house with, or whether Harper was present.  Smart argued the undisclosed pole camera footage does not depict a burgundy car, does not depict a second person entering the residence with Welch, and does not depict Harper leaving the residence after Welch left.  Thus, this evidence "contradicts the heart of the government's case" because Welch was "the only witness who put the gun in Smart's vicinity and control on the date it was seized."  Not being able to use this evidence to impeach Welch's trial testimony was a miscarriage of justice.

The district court concluded a new trial was not warranted because the pole camera video footage was neither material nor exculpatory.  It did not provide evidence Smart did not have before trial -- Smart knew prior to trial Welch visited the residence with a friend and that Harper was not there when the search warrant was executed -- and it did not demonstrate the information Smart had before trial was

false or deficient. Because it is unclear what the "grey" and "grainy" full footage shows, "its omission does not undermine Welch's statements [or] the Court's confidence Smart received a fair trial."

For evidence to be material, there must be a "reasonable probability that, had it been disclosed, the result of the proceeding would have been different." United States v. Robinson, 809 F.3d 991, 996 (8th Cir. 2016) (quotation omitted). A Brady violation is established by showing the undisclosed "evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). In determining whether impeachment evidence is material, "the impeachment evidence must be viewed in context, alongside the witness's testimony, in light of any other impeachment evidence, and in light of corroborating evidence that bears on the witness's credibility." Pederson v. Fabian, 491 F.3d 816, 826 (8th Cir. 2007).

Here, Welch was cross-examined regarding her drug use, memory, and motives, so the jury was "sufficiently apprised of the potential taint on the witness's credibility." Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004) (citation omitted). Nor was the government's case dependent on Welch's testimony. Loggins and Kipnusu testified that they saw Smart put the same firearm on a kitchen counter while he cooked crack cocaine. Welch's testimony was unquestionably important, and the pole camera footage would have provided an additional basis to question her recollection. But her testimony that she saw Smart asleep in the bedroom with the gun within reach was not discredited by the pole camera footage, and that testimony was corroborated by other, even more damaging evidence. The district court did not abuse its discretion in denying Smart's motion for a new trial based on the post-trial disclosure of the full footage.

-14-

**B. Cory Turner Interview.**  Cory Turner was an associate of Smart who had been interviewed by the prosecution in February 2021 as a potential trial witness.  A report of those interviews was disclosed to the defense.  A few days before trial began the prosecution again interviewed Turner "in preparation for potential testimony against" Smart.  In this interview, Turner told the prosecution that Smart does not know how to cook crack cocaine, he had never seen Smart with a firearm, and Turner would be surprised if Smart had a firearm because he was "not into anything," "plus he's old."  Turner did not testify at trial.  The government did not produce the report of this last interview until Smart filed his motion for a new trial in September.

Smart argued the failure to turn over this report prior to trial was a Brady violation.  The district court criticized the non-disclosure but ruled that the failure to disclose did not violate Brady and denied a new trial:

> Turner's June 2021 statements did not provide the defense with information it did not already have.  In Turner's February 2021 statements -- disclosed to Smart in April 2021 -- Turner shared the same information.  Failure to disclose Turner's June 2021 statements could not reasonably be understood to put the whole case in a different light so as to undermine the Court's confidence in the verdicts.

On appeal, Smart argues that the statements in the February interview were "not as exculpatory as the new statement."  Though they may have been less inculpatory, they were not truly exculpatory -- they did not put the whole case in a different light so as to undermine the verdict.  Moreover, in Smart's motion for a new trial -- filed prior to disclosure of the June interview report -- he argued that trial counsel was ineffective in not calling Turner as a witness because Turner would have testified he "never saw . . . [Smart] with a gun" and Smart "did not know how to cook crack cocaine."  This confirms that the defense already knew the information contained in the undisclosed June interview report.  There was no abuse of discretion in declining to find a Brady violation that warranted a new trial.

## V. Ineffective Assistance of Counsel

Smart argues the district court erred in denying his motion for a new trial because trial counsel's assistance was ineffective in many respects, some of which are "readily apparent on the available record" -- failure to file a motion to suppress the DNA test results; failure to call Jennifer Dibble at trial after she testified before the grand jury; failure to call Cody Turner; and failure to cross examine Welch and Kipnusu about their inconsistent statements.

We review claims of ineffective assistance of counsel on direct appeal only in "exceptional cases," as they typically can only be properly reviewed in post-conviction proceedings. United States v. Sanchez-Gonzalez, 643 F.3d 626, 628 (8th Cir. 2011), citing United States v. Hernandez, 281 F.3d 746, 749 (8th Cir. 2002). "An 'exceptional case' that justifies our review of the claim on direct appeal exists if the relevant factual record has been fully developed, a failure to consider the claim on direct appeal would constitute a 'plain miscarriage of justice,' or the alleged error of trial counsel is 'readily apparent.'" Sanchez-Gonzalez, 643 F.3d at 628-29 (citation omitted). We have no difficulty concluding this is not an exceptional case. The above-cited allegations of trial counsel errors are anything but "readily apparent" instances of ineffective assistance of counsel. Those issues will require a fully developed record in which trial counsel has an opportunity to explain his decisions in terms of trial tactics and strategy, and important issues of prejudice can be fully explored. We decline to address these issues on direct appeal.

## VI. Armed Career Criminal Enhancement Issues

At sentencing, the district court determined that Smart has four prior qualifying felony convictions under the under the Armed Career Criminal Act ("ACCA") -- three Iowa convictions for possession with intent to deliver a controlled substance, and a Georgia aggravated assault conviction. This resulted in a 15-year mandatory

minimum sentence. See 18 U.S.C. § 924(e). On appeal, Smart argues that two Iowa drug convictions for violating Iowa Code § 204.401 in 1991 and 1994 and the Georgia assault conviction are not ACCA predicate felony convictions. We review this issue *de novo*. See Bragg, 44 F.4th at 1075.

**A. The Two Iowa Convictions.** The district court determined that the two Iowa controlled substance offenses are qualifying ACCA predicate offenses based on prior Eighth Circuit decisions the court considered controlling and McNeill v. United States, 563 U.S. 816, 820, 823 (2011). On August 10, 2022, after appellate briefing was completed, a panel of this court filed its decision in United States v. Perez, 46 F.4th 691 (8th Cir. 2022). The panel first held that "the federal law in effect at the time of the federal sentencing is the relevant definition for ACCA purposes," an issue on which other courts differ. Id. at 699. Therefore, the panel concluded, the defendant's three prior convictions for violating Iowa Code § 124.401(1)(c)(2) were *not* ACCA predicates because the definition of cocaine under Iowa law in 2013, Iowa Code § 124.206(2)(d), was broader than the definition of cocaine in the federal drug schedules under the Controlled Substances Act at the time of Perez's federal conviction. See id. at 698-99; 21 U.S.C. § 812(c) Schedule II(a)(4); 21 C.F.R. § 1308.12(b)(4) (2018).

At oral argument, without conceding the merits of these issues, government counsel conceded that Perez would require a different outcome and therefore we should remand for further proceedings on whether Smart was properly sentenced under the ACCA. We agree that is the proper course of action. As the district court may decide that the Iowa convictions are no longer proper ACCA predicate offenses, an issue we do not decide, that would moot the question whether the Georgia conviction is a qualifying ACCA predicate, absent a second appeal.

## VII. Supervised Release Revocation

Finally, Smart argues the district court abused its discretion in revoking his supervised release based on this conviction because he was "improperly convicted." See United States v. Montgomery, 532 F.3d 811, 814 (8th Cir. 2008) (standard of review). As we have upheld this conviction, there was no abuse of discretion.

## VIII. Conclusion

For the foregoing reasons, we vacate Smart's sentence and remand to the district court for further sentencing proceedings not inconsistent with this opinion. In all other respects, the judgment of the district court is affirmed.

_____