# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1511
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Ronald Martin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: August 3, 2021
Filed: October 18, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Christopher Martin challenges the district court's[1] denial of his motions to suppress and his objection to application of the career criminal enhancement in U.S.S.G. § 4B1.1(a). We previously affirmed. *United States v. Martin*, 999 F.3d 636

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

(8th Cir. 2021), *reh'g granted and opinion vacated* (Aug.3, 2021). After panel rehearing, we again affirm.

I.

Martin robbed a Sprint Wireless Express store in Davenport, Iowa at gunpoint, making off with cell phones and tablets. Little did he know, he also left with a GPS tracker, courtesy of the store employee. The employee called police, describing the robber as "5' 7" tall, heavyset, male, African American with a grey ski mask, a blue hooded sweatshirt and grey sweatpants." D. Ct. Dkt. 67 at 2. The employee described the getaway car as a dark-green Pontiac Grand Am or Grand Prix driven by someone he did not see, and said the vehicle went north on Elmore Avenue. He also reported that the robber had a tiny, silver handgun.

Officers responded to the robbery within minutes. The first on the scene received a slightly more detailed description that the robber was 300 pounds or more and carrying a duffel bag. Dispatch also began receiving location reports from the GPS tracker, which updated every six seconds. The data, collected by a third-party provider, directed officers to the intersection of Kimberly and Spring streets, about 1.5 miles from the store.

At the intersection, officers saw two cars: a white one and a dark-blue, four-door Ford Contour. There were two black male passengers in the dark-blue car, and police noticed that the occupants were not looking around at the multiple squad cars. When the dark-blue car pulled through the intersection and into a gas station, one officer turned on his overhead lights.

After stopping the car, officers commanded the driver to exit the vehicle with his hands in the air and to walk backwards toward them. After the driver was secured, they did the same with Martin, who was in the passenger seat. The officers

then searched the car and found the stolen cell phones and tablets. Police detained Martin and the driver of the car in separate squad cars.

Police brought the store employee to the scene for a show-up identification. Police removed a handcuffed Martin from the squad car and pointed a spotlight at him. The employee said he was ninety percent sure that Martin was the robber based on build and clothing.

Martin filed motions to suppress the evidence gathered during the stop and the out-of-court identification. The district court entered an order denying the motion to suppress the stop and denied the second motion as moot after the Government said that it would not use the out-of-court identification at trial. Martin pleaded guilty to the lesser included offense of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i) and a conditional guilty plea to interference with commerce by robbery in violation of 18 U.S.C. § 1951 and possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1), preserving his right to appeal the district court's denial of his motions to suppress.

At sentencing, Martin's final Presentence Investigation Report identified him as a career offender because of his prior convictions for: (1) Illinois armed robbery; (2) federal bank robbery; and (3) Iowa robbery in the second degree. Martin objected, arguing that two of the offenses were overbroad. The district court overruled Martin's objection and determined that he was a career offender.[2] The court adopted the PSR's Guidelines range of 262 to 327 months. The district court sentenced Martin to 180 months on Count I, 60 months on Count II to run consecutive to Count

_____

[2]At the sentencing hearing, the Government agreed that Martin was not an armed career criminal, and the PSR was amended to remove the reference to the armed career criminal enhancement.

I, and 120 months on Count III to run concurrent to Counts I and II, for a total of 240 months in prison.

## II.

### A.

Martin argues police did not have probable cause or reasonable suspicion to stop the car. He suggests police should not have relied on the GPS device and that the description of the vehicle by the store's clerk was not a match. On a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Smith*, 648 F.3d 654, 658 (8th Cir. 2011).

The Fourth Amendment secures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A traffic stop is a seizure and "must be supported by reasonable suspicion or probable cause." *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008). Police are permitted to make investigative stops of a vehicle if they have reasonable suspicion that an individual in that vehicle recently committed a crime in a general area. *See United States v. Roberts*, 787 F.3d 1204, 1209–10 (8th Cir. 2015) (applying reasonable suspicion standard to stop of a vehicle several blocks from crime scene); *United States v. Juvenile TK*, 134 F.3d 899, 900–04 (8th Cir. 1998) (applying reasonable suspicion standard for traffic stop where officers received two dispatch messages within forty-five minutes informing them that a vehicle had been involved in criminal activity in the area).

"A reasonable suspicion is a 'particularized and objective' basis for suspecting [criminal activity by] the person who is stopped." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citation omitted). Reasonable suspicion is determined by "look[ing] at the totality of the circumstances of each case to see

whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing [based on his] own experience and specialized training to make inferences from and deductions about the cumulative information available." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *Roberts*, 787 F.3d at 1209 (cleaned up).

The police had at least reasonable suspicion to stop the vehicle. The GPS tracker indicated that it was at the intersection of Kimberly and Spring. Martin argues the GPS was unreliable. In support, he points to cases in which courts heard testimony about the reliability and accuracy of GPS devices. *See United States v. Brooks*, 715 F.3d 1069, 1077–78 (8th Cir. 2013); *United States v. Espinal-Almeida*, 699 F.3d 588, 610–12 (1st Cir. 2012). But those cases are about the admission of the data at trial and do not address whether officers in the field can rely on third-party GPS data while pursuing suspects. Considering the tight window of opportunity officers have to locate a fleeing suspect, we find it reasonable for police to rely on third-party GPS data.

Other factors also supported the officers' suspicion. The intersection of Kimberly and Spring is in the general area of the crime scene. *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012) (factors like the location of the parties may support an officer's decision to stop). When the five police cars arrived at the intersection, they saw two vehicles. Police could reasonably rule out one because it did not even remotely match the description given by the store employee. The Ford Contour roughly matched the description. While the employee said the vehicle was a coupe (the Ford Contour is a four-door), a Ford Contour has the same general shape as a Pontiac GrandAm and Grand Prix. Plus, the color (dark green) is close to the color of the Ford Contour (dark blue). Keeping in mind that the employee only saw the car briefly after dark, it was reasonable for officers to believe the employee made

minor errors and that this was the car they were looking for. *See United States v. Quinn*, 812 F.3d 694, 699 (8th Cir. 2016) ("We have held that generic suspect descriptions and crime-scene proximity can warrant reasonable suspicion where there are few or no other potential suspects in the area who match the description.").

Police also noticed unusual behavior by the car's occupants, who did not acknowledge an overwhelming police presence. *See Terry v. Ohio*, 392 U.S. 1 (1968) (irregular activities like repeatedly walking by the same store window can support reasonable suspicion); *United States v. Sokolow*, 490 U.S. 1, 8–9 (1989) (irregularity of purchasing $2,100 in plane tickets with a roll of $20 bills could support reasonable suspicion). The totality of the circumstances gave police at least reasonable suspicion that criminal activity was afoot, so stopping the vehicle to investigate that suspicion comported with the Fourth Amendment.

B.

Martin also challenges the district court's denial of his motion to suppress the use of the show-up lineup, which he says was unduly suggestive. The district court denied the motion as moot after the Government committed that it would not use the evidence at trial. While it may have been better for the district court to grant the motion as unopposed or defer ruling until the issue was raised at trial, *see* Fed. R. Crim. P. 12(d) (permitting deferral on a finding of good cause), any mistake of form was harmless. The district court strongly suggested that it believed the identification was inadmissible. This, combined with the Government's representation that it would not be used at trial, dissipated any reasonable concern that the identification would be introduced as evidence. Plus, nothing in the district court's ruling prevented Martin from reasserting his challenge at trial. Any error was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

## III.

Last, Martin argues that the district court erred in finding that he was a career offender and subject to an enhancement under U.S.S.G. § 4B1.1. We review application of the career offender enhancement *de novo*. *United States v. Eason*, 643 F.3d 622, 623 (8th Cir. 2011). A career offender enhancement is appropriate when the offender is over 18, being sentenced for a crime of violence or a controlled substance offense, and has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Martin does not challenge the district court's finding that his current conviction and his previous conviction for federal bank robbery are crimes of violence. *See United States v. Harper*, 869 F.3d 624, 626–27 (8th Cir. 2017) (federal bank robbery is a crime of violence). The question is whether one of his other prior two convictions should be similarly categorized.

We previously held that Martin's Illinois armed robbery conviction qualified as a crime of violence under the "force" clause of the Sentencing Guidelines. *United States v. Martin*, 999 F.3d 636 (8th Cir. 2021), *reh'g granted and opinion vacated* (Aug. 3, 2021). The Supreme Court later decided *Borden v. United States*, holding that a criminal offense that can be accomplished with a *mens rea* of recklessness cannot be a "violent felony" under the elements clause of the Armed Career Criminal Act. 141 S. Ct. 1817, 1821–22 (2021). The Sentencing Guidelines's definition of "crime of violence" is so similar to the ACCA's definition of "violent felony" that "we generally consider cases interpreting them interchangeably." *United States v. Brown*, 916 F.3d 706, 707–08 (8th Cir. 2019) (citation omitted). We granted Martin's petition for rehearing to reconsider the enhancement after *Borden*. We think Martin's conviction for Illinois armed robbery still qualifies as a crime of violence under the "enumerated offenses" clause of the Sentencing Guidelines. U.S.S.G. § 4B1.2(a)(2).

The career offender provision of the Sentencing Guidelines defines "crime of violence" as one that has an element of physical force against the person of another, or is one of a list of enumerated offenses. U.S.S.G. § 4B1.2(a). The enumerated offenses include robbery. *Id.* at § 4B1.2(a)(2). But the analysis doesn't end there. We must decide whether "the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding crime of violence." *United States v. Stovall*, 921 F.3d 758, 759 (8th Cir. 2019) (citation omitted). The "generic federal definition of a crime of violence means the sense in which the term is now used in the criminal codes of most States." *Id.* (citation omitted) (cleaned up).

To decide whether Illinois armed robbery falls within the generic federal definition, we start by "identifying the elements of the generic enumerated offense." *Id.* (citation omitted). We define generic robbery as "aggravated larceny, or the misappropriation of property under circumstances involving immediate danger to a person." *Id.* at 760 (citation omitted). At the time of Martin's conviction, Illinois defined robbery as "knowingly tak[ing] property . . . from the person or presence of another by the use of force or by threatening the imminent use of force." 720 Ill. Comp. Stat. 5/18-1(a). Illinois defined armed robbery as a violation of Section 18-1 coupled with one of the following: (1) carrying a dangerous weapon other than a firearm; (2) carrying a firearm; (3) discharging a firearm during the commission of the offense; or (4) discharging a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person. 720 Ill. Comp. Stat. 5/18-2(a).

The statute shows that Illinois armed robbery has the same elements as our generic definition of robbery—misappropriation of property under circumstances involving immediate danger to a person. *Stovall*, 921 F.3d at 760. Martin argues, though, that it is possible to accomplish Illinois armed robbery without circumstances

involving immediate danger to a person because one could commit the crime by only using force[3] against property.

The plain language of the statute forecloses Martin's argument. Illinois armed robbery requires either carrying a dangerous weapon, carrying a firearm, or discharging a firearm. 720 Ill. Comp. Stat. 5/18-2(a). So armed robbery necessarily involves immediate danger to a person because there must be a dangerous weapon present. *See Stovall*, 921 F.3d at 760–61 ("While Stovall cites Arkansas cases that potentially involve actions insufficient to constitute 'violent force' . . . —jerking a victim's hand, blocking a victim's exit, cornering a victim, and grabbing a victim's dress—the actions are sufficient to constitute 'immediate danger.'").

Illinois case law further refutes Martin's argument. The Illinois Supreme Court held that armed robbery requires force "such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will." *People v. Bowel*, 488 N.E.2d 995, 997 (Ill. 1986) (citation omitted). Illinois courts have repeatedly distinguished theft from robbery by emphasizing that theft only requires "the mere physical effort of taking the [property] from the victim's person and transferring it to the defendant," but robbery requires force "to overcome the physical resistance created by the attachment of an item to the person or clothing of the owner." *People v. Taylor*, 541 N.E.2d 677, 679 (Ill. 1989) (citation omitted) (cleaned up); *see also People v. Patton*, 389 N.E.2d 1174, 1176 (Ill. 1979) ("where it appeared that the article was taken without any sensible or material violence *to the person* . . . rather by sleight of hand and adroitness than by open violence, and without any struggle on his part, it is merely larceny from the person") (emphasis added) (citation omitted); *People v. Campbell*, 84 N.E. 1035,

---

[3]The discussion of "force" here relates to the elements of an enumerated offense; it is independent of the analysis for the "force clause" of the Sentencing Guidelines.

1036 (Ill. 1908) ("The difference between stealing from the person of another and robbery lies in the force or intimidation used."). If Martin was right and robbery could be accomplished by only using force against the property itself, there would be no distinction between robbery and theft.

Illinois armed robbery qualifies as "generic" robbery under the enumerated offense clause. Because Martin has two prior felony convictions for crimes of violence, we do not consider his Iowa robbery conviction. We affirm the district court's career offender enhancement.

IV.

The judgment of the district court is affirmed.

_____

-10-