United States Court of Appeals

For the Eighth Circuit

_____

No. 21-2151

_____

United States of America

*Plaintiff - Appellee*

v.

Wayne Michael Fisher, also known as Burrito

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 17, 2021
Filed: February 18, 2022

_____

Before SMITH, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Wayne Fisher appeals the district court's[1] determination that his prior Minnesota first-degree burglary conviction qualifies as a violent felony under 21

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

U.S.C. § 841(b)(1)(A) and the district court's denial of his request to reduce his sentence based on time served in tribal jail. We affirm.

**I.**

Wayne Fisher was charged with one count of conspiracy to distribute fifty grams or more of methamphetamine and two counts of possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Government also filed an information claiming that Fisher was subject to an enhanced sentence based on his prior conviction for first-degree burglary under Minnesota Statutes section 609.582, subdivision 1(c). *See* 21 U.S.C. §§ 841(b)(1)(A), 851.

Fisher pleaded guilty to one count of possession with intent to distribute methamphetamine but objected to the enhanced sentence. In addition, Fisher requested sentencing credit for the time he served in tribal jail for a tribal court conviction based on the same conduct.

The district court overruled Fisher's objection to the sentence enhancement, concluding that his prior burglary conviction qualifies as a "serious violent felony" under 21 U.S.C. § 841(b)(1)(A). The district court also denied Fisher's request to credit his time served in tribal jail against his sentence on the ground that it did not have the authority to impose a sentence below the mandatory minimum. The district court sentenced Fisher to 180 months' imprisonment, the statutory minimum for a defendant with a prior "serious violent felony" conviction. *See* § 841(b)(1)(A). Fisher appeals, challenging the district court's determination that his prior burglary conviction qualifies as a "serious violent felony" under § 841(b)(1)(A) and the district court's refusal to credit his time served in tribal jail against his sentence.

## II.

We begin with Fisher's challenge to the district court's conclusion that his Minnesota conviction for first-degree burglary qualifies as a "serious violent felony" under § 841(b)(1)(A). We review the district court's "legal determination that a prior conviction is a predicate offense de novo." *United States v. Oliver*, 987 F.3d 794, 805 (8th Cir. 2021) (internal quotation mark omitted).

Although a person convicted of an offense involving fifty grams or more of methamphetamine normally faces a minimum sentence of 10 years' imprisonment, § 841(b)(1)(A)(viii), the minimum sentence is 15 years' imprisonment if the person committed the offense "after a prior conviction for a serious drug felony or serious violent felony ha[d] become final," § 841(b)(1)(A). An offense is a "serious violent felony" if it is specifically enumerated in 18 U.S.C. § 3559(c)(2)(F), which does not include burglary, or is "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 21 U.S.C. § 802(58) (defining "serious violent felony" with reference to the definition in 18 U.S.C. § 3559(c)(2)).

To determine whether a conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 3559(c)(2)(F)(ii), we apply a categorical approach. *See Oliver*, 987 F.3d at 806; *Mathis v. United States*, 579 U.S. 500, 136 S. Ct. 2243, 2247-48 (2016). "In that analysis, we compare the elements of the statute under which the defendant was convicted with the 'generic' definition of [the crime]." *United States v. McArthur*, 850 F.3d 925, 937 (8th Cir. 2017). The "generic crime" is "the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013). If a crime of conviction's elements are the same or narrower than the generic crime's elements, and the generic crime is a "violent felony," then the crime of conviction is also a "violent felony." *See McArthur*, 850 F.3d at 937; *United States v. Martin*, 15 F.4th 878, 883-84 (8th Cir. 2021). In other words, the crime of conviction must "fit[] within" the generic crime, such that anyone who commits the former has also

-3-

committed the latter. *See Martin*, 15 F.4th at 883-84. If a statute contains alternatives, some of which do not have a force element, then we must determine whether the statute is divisible into alternative elements—separate crimes—or instead sets forth alternative factual means to commit a single offense. *Mathis*, 136 S. Ct. at 2249; *United States v. Mata*, 869 F.3d 640, 642 (8th Cir. 2017). "If statutory alternatives carry different punishments, then . . . they must be elements," meaning they are treated as separate crimes. *Mathis*, 136 S. Ct. at 2256. When making the means-or-elements determination, we may consider authoritative state court decisions. *Id.* "[I]f state law fails to provide clear answers," we may look at "the record of a prior conviction itself . . . for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." *Id.* at 2256-57 (internal quotation marks omitted) (second and third alterations in original).

"[I]f the statute is divisible, setting forth 'multiple, alternative versions of the crime,' and not all of the alternatives satisfy the generic definition, then we apply the 'modified categorical approach' to decide which of the alternatives was the basis for the conviction." *McArthur*, 850 F.3d at 937-38 (quoting *Descamps*, 570 U.S. at 262-65). "[T]o determine what crime, with what elements, a defendant was convicted of," we may consider "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)." *Mathis*, 136 S. Ct. at 2249; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005). Then, we determine whether that crime is broader than the generic offense. *Descamps*, 570 U.S. at 263. The crime of conviction qualifies as a "serious violent felony" only if it is not broader than the generic offense. *See id.* at 260-65.

Minnesota's first-degree burglary statute makes it a crime to

enter[] a building without consent and with intent to commit a crime, or enter[] a building without consent and commit[] a crime while in the building . . . if:

(a) the building is a dwelling and another person, not an accomplice, is present in it when the burglar enters or at any time while the burglar is in the building;

(b) the burglar possesses, when entering or at any time while in the building, any of the following: a dangerous weapon, any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or an explosive; or

(c) the burglar assaults a person within the building or on the building's appurtenant property.

Minn. Stat. § 609.582, subd. 1. The statute provides a mandatory minimum sentence of six months for violations of paragraph (a), "burglary of an occupied dwelling," but no mandatory minimum sentence for violations of paragraphs (b) or (c). *Id.* at subd. 1a.

Fisher and the Government agree that the statute is broader than the generic definition of burglary. Thus, we must determine whether the statute is divisible. *See Mathis*, 136 S. Ct. at 2249. Because (a) has a different punishment from (b) and (c), (a) "must be [an] element[]," indicating a separate crime. *See id.* at 2256. Fisher argues that (b) and (c)—(c) being the paragraph he was convicted under—cannot denote elements of separate crimes because they do not have different punishments. *See id.* But if (a) is an element, then first-degree burglary is not a distinct crime in and of itself, and the statutory structure suggests that (b) and (c) are separate crimes like (a).

Minnesota state court cases treat each paragraph as a distinct crime rather than as an alternative factual means of committing the same crime. Defendants are specifically charged and convicted of (a), (b), or (c), *see, e.g., State v. Spence*, 768 N.W.2d 104, 107 (Minn. 2009); *State v. Hodges*, 384 N.W.2d 175, 178 n.1, 182-83 (Minn. Ct. App. 1986), the elements of which need to be proven beyond a reasonable doubt, *see, e.g., State v. Kelley*, No. A19-0997, 2020 WL 3635298, at *1 (Minn. Ct. App. July 6, 2020) (unpublished); *State v. Nyansikera*, No. A14-0993, 2015 WL 1401573, at *1-2 (Minn. Ct. App. March 30, 2015) (unpublished). The Minnesota Court of Appeals has also referred to each paragraph as a separate crime. *State v. Mitchell*, 881 N.W.2d 558, 562 (Minn. Ct. App. 2016) (referring to "the elements of

first-degree burglary (dangerous weapon)" and "the elements of first-degree burglary (assault)"). Discussing (b) and (c), it explained that "[s]ince *each crime* requires proof of an element that the other does not, neither crime necessarily is proved when the other is proved." *Id.* (emphasis added).

Fisher's arguments do not persuade us that Minnesota courts treat the paragraphs as means. Fisher argues that Minnesota courts have treated similarly structured statutes as having alternative means. But those statutes are distinguishable because none of them has separate punishments for different paragraphs like first-degree burglary does. *See* Minn. Stat. §§ 609.2242, .25, .582. And Minnesota courts care about whether paragraphs have different punishments because different punishments reflect different levels of culpability. *See State v. Dalbec*, 789 N.W.2d 508, 511 (Minn. Ct. App. 2010).

Fisher also argues that *Mitchell* stands for the proposition that the paragraphs of first-degree burglary do not have different elements and therefore are not separate crimes. *See* 881 N.W.2d at 562-64. We disagree. *Mitchell* dealt with the interpretation of a sentencing statute, which generally bars courts from imposing separate sentences for two convictions that arose from the same conduct, and a specific exception to that statute for burglary. *Id.* at 563; Minn. Stat. § 609.04, .585. Even though the court concluded under the sentencing statute and its exception that the defendant could not be sentenced for both (b) and (c), we do not interpret *Mitchell* as suggesting that the paragraphs of first-degree burglary cannot be treated as separate crimes. *See Mitchell*, 881 N.W.2d at 562-64.

Finally, Fisher observes that the Minnesota Supreme Court has stated that "[a] person may commit first-degree burglary in several ways." *See State v. Holmes*, 778 N.W.2d 336, 340 (Minn. 2010). But the court also noted that the defendant "was convicted of and sentenced for violating Minn. Stat. § 609.582, subd. 1(c), first-degree burglary with assault." *Id.* Thus, the court suggested that the statute's paragraphs defined separate crimes. *Accord Spence*, 768 N.W.2d at 106-07 (noting

-6-

that the defendant was convicted of two counts of first-degree burglary under (a) and (c)); *Hodges*, 384 N.W.2d at 178 n.1, 182-83.

In addition to Minnesota state caselaw and the language and structure of the statute, Minnesota's model jury instructions and "the record of [the] prior conviction" also support our conclusion that the burglary statute is divisible. *See Mathis*, 136 S. Ct. at 2256. "We may use a state's model jury instructions to reinforce our interpretation of the means or elements inquiry." *United States v. McMillan*, 863 F.3d 1053, 1057 (8th Cir. 2017) (internal quotation marks omitted). Minnesota's model jury instructions state that "[a]s a general rule, parentheses indicate options for factual variations, whereas brackets indicate optional element choices, depending on the portion of the statute that has been charged." 10 Minn. Pract. Series, Crim. Jury Instr. Guide—Criminal Preliminary Materials. The model jury instructions for section 609.582, subdivision 1, have brackets around each paragraph. 10A Minn. Pract. Series, Crim. Jury Instr. Guide 17.01. There are also separate jury instructions for each paragraph. *Id.* at 17.02-17.04. Moreover, the criminal complaint and judgment associated with Fisher's prior conviction show that he was charged with and convicted of violating Minnesota Statutes section 609.582, subdivision 1(c).[2]

Based on the statute's language and structure, Minnesota state court decisions, Minnesota's model jury instructions, and the record of Fisher's prior conviction, we conclude that Minnesota's first-degree burglary statute is divisible.

---

[2]Fisher argues that the statute cannot be divisible because he was acquitted of both counts of assault at trial and the Government did not submit the jury instructions given in the trial to prove that the jury found that he committed burglary with assault. This argument fails because to convict Fisher of violating (c) the state was required to prove that "the defendant assault[ed] a person within the building or on the building's appurtenant property." *See* Minn. Stat. § 609.582, subd. 1(c); *Kelley*, 2020 WL 3635298, at *1; Minn. Pract. Series, Crim. Jury Instr. Guide 17.04.

Now, we apply the modified categorical approach to determine "which of the alternatives was the basis for the conviction." *McArthur*, 850 F.3d at 937-38. The criminal complaint and judgment show that Fisher was charged and convicted under Minnesota Statutes section 609.582, subdivision 1(c), burglary with assault.

Fisher does not argue that if the burglary statute is divisible, his prior conviction nonetheless does not qualify as a "serious violent felony." Thus, we conclude that Minnesota's first-degree burglary statute is divisible and that paragraph (c), burglary with assault, qualifies as a "serious violent felony," and we affirm the district court's application of the enhanced sentence. *See United States v. Rice*, 699 F.3d 1043, 1050 (8th Cir. 2012) ("Issues not raised in a party's opening brief are waived.").

## III.

Next, we address Fisher's challenge to the district court's denial of his request to adjust his sentence based on time served in tribal jail. The district court concluded that it did not have the authority to credit Fisher for time served in tribal jail. We agree.

At sentencing, Fisher argued that U.S.S.G. § 5G1.3(b)(1) allowed the district court to adjust his sentence for time served in tribal jail even though he was sentenced to the 15-year mandatory minimum sentence. *See* § 841(b)(1)(A). Section 5G1.3(b)(1) does not apply to Fisher, however, because it applies only to undischarged sentences, and Fisher's tribal jail term was discharged. On appeal, Fisher argues for the first time that the district court can "adjust" his sentence to reflect time he served in tribal jail under U.S.S.G. § 5K2.23. Because Fisher did not raise § 5K2.23 at sentencing, we review for plain error. *See United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020). As relevant here, to prevail under plain-error review, the appellant must show that the district court committed an error that "is clear or obvious under current law." *United States v. Diaz-Ortiz*, 927 F.3d 1028, 1030 (8th Cir. 2019).

The district court did not clearly or obviously err in refusing to give Fisher credit for time served in tribal jail. Under § 5K2.23, the district court can depart downward "if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." Fisher argues that § 5K2.23 allows a court to "adjust" a sentence below a statutory minimum. But all § 5K2.23 allows a court to do is depart downward, not adjust, and a court cannot depart below the statutory minimum sentence unless it has statutory authority to do so. *See United States v. Watts*, 553 F.3d 603, 604 (8th Cir. 2009). Neither of the statutory exceptions apply here. *See* 18 U.S.C. § 3553(e) (substantial-assistance exception), § 3553(f) (information-disclosure exception). Thus, we are inclined to agree with the other circuits that have decided this issue that § 5K2.23 does not allow the district court to depart downward below the statutory minimum. *See United States v. Moore*, 918 F.3d 368, 371-72 (4th Cir. 2019); *United States v. Lucas*, 745 F.3d 626, 629 n.5 (2d Cir. 2014); *United States v. Cruz*, 595 F.3d 744, 746 (7th Cir. 2010). At a minimum, the district court did not clearly or obviously err in denying Fisher's request.

Finally, Fisher argues for the first time on appeal that the different treatment of discharged and undischarged sentences in 18 U.S.C. § 3584 violates his due process rights. We review this challenge for plain error. *See Coleman*, 961 F.3d at 1027. In *United States v. Otto*, we held that treating discharged and undischarged sentences differently is supported by a rational basis and therefore does not violate due process rights. 176 F.3d 416, 418 (8th Cir. 1999). We explained that

> [w]ith undischarged sentences, there remains uncertainty as to the amount of time a defendant will actually serve. For example, a defendant could be paroled, placed on probation after serving some period of shock detention, given credit off a sentence for good behavior, or have the sentence vacated. There are no such contingencies in regard to a discharged sentence and it is rational to treat the two differently.

*Id.* Even though *Otto* involved a pre-§ 5K2.23 challenge to § 5G1.3(b)'s exclusive application to undischarged sentences, not a challenge to 18 U.S.C. § 3584, we are nonetheless bound by *Otto's* conclusion that treating discharged and undischarged sentences differently does not violate the Due Process Clause. *See id.* Thus, the district court did not clearly or obviously err by applying § 3584.

## IV.

For the foregoing reasons, we affirm Fisher's sentence.

_____