United States Court of Appeals
For the Eighth Circuit
No. 21-2096

United States of America

*Plaintiff - Appellee*

v.

Darvill Jimmy Joseph Bragg

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: February 17, 2022
Filed: August 15, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Darvill Bragg of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). The district court[1] sentenced him as an armed career criminal to 240 months' imprisonment. 18 U.S.C. § 924(e). Bragg appeals his conviction,

---

[1]The Honorable John A. Jarvey, then Chief Judge of the United States District Court for the Southern District of Iowa, now retired.

arguing that evidence from his iPhone should have been suppressed because the government delayed unreasonably before seeking a search warrant, and that prior firearm convictions were improperly admitted under Federal Rule of Evidence 404(b). He also appeals his sentence, arguing that neither his Iowa willful injury conviction nor his two Illinois armed robbery convictions qualify as "violent felonies" under § 924(e). He further argues the Illinois robbery convictions were not "committed on occasions different from one another," § 924(e)(1), and thus constitute only one prior violent felony conviction. We affirm.

## I. The iPhone Evidence Issue

On the night of October 25, 2019, Davenport, Iowa police investigated a "shots fired" incident. The victim, Jalen Ross, told police that when he arrived at the apartment of his ex-girlfriend, Tontianna Hill, Merrill Howard and Darvill Bragg, Hill's new boyfriend, shot at him from a black Chevrolet Impala. Ross recognized Bragg from Facebook pictures. He said Bragg was holding a black revolver. Based on this information, police stopped a black Impala they observed returning to the apartment complex. Hill was driving with Bragg in the passenger seat. When police recovered an unloaded black revolver from the map pocket directly in front of Bragg, they arrested Bragg and seized four iPhones. Hill identified one as belonging to Bragg. At trial, the government introduced videos recovered in a warrant search of the iPhone, including an October 20 video in which Bragg was carrying a revolver matching the gun found in the Impala's map pocket and wearing the sweatshirt he was wearing when arrested.

At the time of his arrest, Bragg was also the primary suspect of a separate shots fired incident on October 17. Detective Bryan Butt was investigating that shooting and was assigned to investigate the October 25 shooting, as well as other shooting incidents that plagued Davenport in late October and early November 2019. Based on the October 25 shooting incident, Detective Butt applied for a warrant to search

Bragg's residence on October 31 and a warrant to search his iPhone on November 18. Both warrants issued. Bragg does not argue the issuing magistrates lacked probable cause to issue either warrant. Bragg was always in custody after his arrest.

Bragg's iPhone was seized incident to his lawful arrest. Given the volume and sensitive nature of information stored on modern cell phones, "a warrant is generally required" before the search of a cell phone seized incident to arrest. Riley v. California, 573 U.S. 373, 401 (2014). Because a seizure is generally less intrusive than a search, the Supreme Court "has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search . . . would have been held impermissible." Segura v. United States, 468 U.S. 796, 806 (1984) (citations omitted). However, "a seizure reasonable at its inception . . . may become unreasonable as a result of its duration." Id. at 812. These general principles apply in this case.

On appeal, Bragg argues, as he did to the district court, that Detective Butt's twenty-four-day delay in applying for a warrant to search the iPhone violated the Fourth Amendment and therefore the district court erred in not suppressing evidence recovered in the ensuing warrant search of the iPhone. We disagree.

Detective Butt was the only witness at the pre-trial suppression hearing. He described his overlapping investigations of two shooting incidents in which Bragg was the primary suspect, which involved multiple crime scenes, witnesses, and warrants, and his participation in investigating other firearm and shooting incidents in late October and early November 2019. He explained that evidence destruction concerns made it more imperative to get a warrant to search Bragg's residence than his iPhone. In testimony the district court explicitly credited, Butt testified that, after the iPhone warrant issued, he did an initial review of the extracted data, identified videos showing Bragg in possession of a firearm, and provided that data to the United States Attorney's Office. Thus, any later delays are not at issue on appeal.

Based on Butt's testimony, the district court concluded that the twenty-four-day delay in applying for a warrant to search what Hill identified as Bragg's iPhone was not unreasonable. Balancing the governmental and private interests at issue in light of the relevant facts and circumstances, the court concluded that "typical staleness" concerns were not involved because electronic devices such as cell phones retain data for long periods of time. Addressing the length of the delay, the court ruled that "although it is never a good thing to deprive people of their property without determining its evidentiary value, the delay here of twenty-four days does not seem excessive especially in light of the fact of [Bragg's] arrest and detention." Bragg appeals this ruling. We review the district court's findings of fact for clear error and its conclusion that the Fourth Amendment was not violated *de novo*. See United States v. Mays, 993 F.3d 607, 614 (8th Cir. 2021).

The question whether Detective Butt unreasonably delayed in applying for a warrant to search the iPhone "is measured in objective terms by examining the totality of the circumstances," which requires us to balance "privacy-related and law enforcement-related concerns." Mays, 993 F.3d at 616-17 (quotations omitted).

> On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure, and the nature of the seized property. On the government-interests side, relevant considerations include the government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time we expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant.

Id. at 617 (citations omitted).

Although significantly longer delays have been upheld as not unreasonable, without question the twenty-four day delay at issue is of concern. Compare Mays, 993 F.3d at 617 (fifteen-day delay is a "considerable period"), with United States v. Stabile, 633 F.3d 219, 235-36 (3d Cir.) (three-month delay troubling but reasonable under the circumstances), cert. denied, 565 U.S. 942 (2011).

As the Supreme Court's opinion in Riley made clear, the property seized -- an iPhone identified as belonging to Bragg -- raises powerful Fourth Amendment concerns, both in the quality and quantity of private personal data it likely contains, and because lengthy seizure of an item of vital importance in daily life is likely to significantly interfere with a person's possessory interests. See Robbins v. City of Des Moines, 984 F.3d 673, 680-81 (8th Cir. 2021) (warrantless seizure of cell phone and camera, and detention for twelve days without arguable probable cause unreasonable). However, as the district court recognized, these concerns are greatly lessened in this case.

First, because smartphones "retain data for long periods of time," delay between the time a cell phone is seized and when it is searched is not likely to cause stored personal data to be lost, or data of potential evidentiary relevance to become stale. More important to the private interests at stake, Bragg was in police custody for the entire twenty-four-day period, and there is no evidence that either Bragg or anyone acting on his behalf made a request or demand for its return, or even inquired about it. See United States v. Clutter, 674 F.3d 980, 984-85 (8th Cir.) (temporary seizure of a jailed defendant's computers "did not meaningfully interfere with his possessory interests"), cert. denied, 568 U.S. 882 (2012); Stabile, 633 F.3d at 235-36 (no return requested until eighteen months after seizure). As the Supreme Court observed in United States v. Johns, defendants who "never sought return of the property . . . have not even alleged, much less proved, that the delay in the search . . . adversely affected legitimate interests protected by the Fourth Amendment." 469 U.S. 478, 487 (1985).

By contrast, the government had a strong legitimate interest in seizing the iPhone incident to Bragg's lawful arrest. They had probable cause to believe Bragg was guilty of a federal law firearm offense and/or a state law felony shooting offense. "[A]ll else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." United States v. Smith, 967 F.3d 198, 209 (2d Cir. 2020) (quotation omitted); see Mays, 993 F.3d at 617. Here, the relevant circumstances, including Hill's statement that it was Bragg's iPhone, gave officers reason to hold the iPhone to apply for a warrant to search for evidence of any offense that may be charged, and as potential evidence itself that Bragg was the person in possession of the firearm found in the vehicle map pocket near where he was sitting. See United States v. Burris, 22 F.4th 781, 785 (8th Cir. 2022) ("Delay in searching a phone is immaterial to the reasonableness of a seizure . . . when the device has independent evidentiary value.") (citations omitted); cf. United States v. Chatmon, 742 F.3d 350, 353 (8th Cir. 2014).

Of lesser significance, but still relevant, was Butt's testimony that during the delay period, he was engaged in multiple firearm and shooting investigations, including two in which Bragg was the primary suspect. Though Butt conceded the iPhone search warrant application was "not particularly complex," he logically explained why he gave the apartment search warrant higher priority. Bragg introduced no evidence that Detective Butt delayed merely "because law enforcement officers simply believed that there was no rush." United States v. Mitchell, 565 F.3d 1347, 1353 (11th Cir. 2009) (21-day delay unreasonable). We agree with the Seventh Circuit that "police imperfection is not enough to warrant reversal . . . [where the] delay was not the result of complete abdication of his work or failure to see any urgency." United States v. Burgard, 675 F.3d 1029, 1034 (7th Cir.) (quotations omitted), cert. denied, 568 U.S. 852 (2012).

For these reasons, we agree with the district court that the twenty-four-day delay was not unreasonable in these circumstances. The court did not err in denying Bragg's motion to suppress.[2]

## II. Admissibility of the Past Firearm Convictions

Bragg next argues the district court abused its discretion in admitting evidence of his 2010 armed robbery conviction and 2014 willful injury conviction to prove his knowledge and intent to possess the firearm at issue. See Fed. R. Evid. 404(b). Rule 404(b) precludes the use of other crimes or wrongs evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." We review Rule 404(b) admissions for abuse of discretion. "We will only reverse those admissions when they clearly had no bearing on the case and were introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Drew, 9 F.4th 718, 722 (8th Cir. 2021) (cleaned up), cert. denied, 142 S. Ct. 1159 (2022).

To be admitted under Rule 404(b), "[t]he evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) (quotations omitted). We conclude the district court did not abuse its discretion in admitting the two prior firearm convictions.

First, the convictions were relevant. Bragg denied an element of the § 922(g)(1) charged offense, claiming he did not knowingly possess a gun found in

---

[2]Accordingly, we need not address the district court's alternative ruling that the cell phone evidence was admissible under the Leon good faith exception to the Fourth Amendment exclusionary rule, even if the 24-day delay rendered the search warrant invalid. See United States v. Leon, 468 U.S. 897, 922-23 (1984).

the car's map pocket inches in front of him. We have routinely affirmed the use of past gun possession offenses to prove the element of knowing possession in violation of 18 U.S.C. § 922(g)(1). See, e.g., United States v. Smith, 978 F.3d 613, 616 (8th Cir. 2020), cert. denied, 142 S. Ct. 396 (2021).

Second, the convictions were similar in kind to the charged offense. See Walker, 470 F.3d at 1275 (prior armed robbery similar to felon-in-possession offense because "each involved his possession of a firearm in connection with a criminal act"). Given this similarity, the five and nine-year-old convictions were not too remote in time. See, e.g., Smith, 978 F.3d at 616-17 (admitting eleven-year-old gun crime to prove knowledge for felon-in-possession offense); Walker, 470 F.3d at 1275 (eighteen-year-old conviction).

Third, the prior offenses were supported by sufficient evidence -- investigating officers testified about each offense, and the government submitted certified records of the prior convictions. See Walker, 470 F.3d at 1275.

Fourth, affording the district court "substantial deference" to make this determination, we agree that the prior convictions were higher in probative value than prejudicial effect. Id. The district court significantly reduced the danger of unfair prejudice. While the jury heard testimony by the investigating officers, including that Bragg admitted to possessing a firearm as part of the 2010 offense, criminal case documents supporting the convictions were submitted to the court and not the jury, and the court instructed the jury -- before and after the officers' testimony -- that they cannot use the evidence "to find that because the defendant may have committed similar acts in the past that he must, therefore, be guilty of the crime charged here." This caution was repeated in the final jury instructions. Such instructions are important in reducing the potential for unfair prejudice. See Walker, 470 F.3d at 1275; cf. Drew, 9 F.4th at 724 and 730 (Kelly, J., concurring).

## III.  Sentencing Issues

At sentencing, overruling Bragg's objections, the district court concluded that he has three prior convictions for "violent felonies" that trigger a 15-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e): a 2014 Iowa willful injury conviction, and two 2010 Illinois armed robbery convictions.  The PSR calculated an advisory guidelines sentencing range of 262-327 months, above the ACCA mandatory minimum 180 months.  After considering the 18 U.S.C. § 3553(a) sentencing factors, the district court varied downward and imposed a 240-month prison sentence.  Bragg appeals the sentence, arguing the three prior state convictions do not qualify as ACCA violent felonies, and that the two 2010 Illinois offenses were not committed on different occasions and therefore were not separate ACCA predicate convictions.

### A. The Iowa Willful Injury Conviction

In 2014, Bragg was convicted in state court of violating Iowa Code § 708.4(1), which provides that "[a]ny person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury, which is punishable as . . . [a] class 'C' felony, if the person causes serious injury to another." On appeal, he argues the district court erred in determining this was a prior "violent felony" conviction because the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i), commonly referred to as the "force clause."  We review this issue *de novo*.  See United States v. Vanoy, 957 F.3d 865, 867 (8th Cir. 2020).  Our path is a well-traveled road:

> In determining whether a prior conviction qualifies as a "violent felony" under the ACCA[,] courts use a categorical approach that looks to the fact of conviction and the statutory elements of the prior offense.  In

cases where a divisible statute describes alternate ways of committing a crime -- only some of which satisfy the definition of a violent felony -- courts may use a modified categorical approach and examine a limited set of documents to determine whether a defendant was necessarily convicted of a violent felony. These materials include charging documents, jury instructions, plea agreements, transcripts of plea colloquies, or some comparable judicial record.

United States v. Clark, 1 F.4th 632, 634 (8th Cir.) (cleaned up), cert. denied, 142 S. Ct. 511 (2021). Because "[t]he Sentencing Guidelines's definition of 'crime of violence' is so similar to the ACCA's definition of 'violent felony' . . . we generally consider cases interpreting them interchangeably." United States v. Martin, 15 F.4th 878, 883 (8th Cir. 2021), cert. denied, 142 S. Ct. 1432 (2022).

A violation of Iowa Code § 708.4(1) is a class C felony "if the person causes serious injury to another." Section 702.18 defines "serious injury" to mean:

> a. Disabling mental illness.
> b. Bodily injury which does any of the following:
>     (1) Creates a substantial risk of death.
>     (2) Causes serious permanent disfigurement.
>     (3) Causes protracted loss or impairment of the function of any bodily member or organ.
> c. Any injury to a child that requires surgical repair and necessitates the administration of general anesthesia.

In United States v. Quigley, 943 F.3d 390, 394 (8th Cir. 2019), we concluded that a violation of Iowa Code § 708.2(1) -- assault with intent to commit serious injury -- is a crime of violence under the force clause. This statute also incorporates the definition of "serious injury" in § 702.18. We concluded § 702.18 is indivisible. Therefore, we will likewise apply the categorical approach in this case.

-10-

Bragg argues the inclusion of "disabling mental illness" in the indivisible definition of "serious injury" in § 702.18 renders § 708.4(1) facially overbroad because a defendant can cause disabling mental illness without "the use, attempted use, or threatened use of *physical* force against the person of another" (emphasis added). See Johnson v. United States, 559 U.S. 133, 140 (2010) ("the phrase 'physical force' means *violent* force -- that is, force capable of causing physical pain or injury to another person.") (emphasis in original). In Clark, we rejected this same argument in concluding that a violation of Iowa Code § 708.4(2) -- a Class D felony that is committed when a person "causes bodily injury to another" -- is a violent felony under the force clause, relying on the Supreme Court of Iowa definition of "bodily injury" as requiring "physical pain, illness or any impairment of physical condition." 1 F.4th at 636-37 (citing State v. McKee, 312 N.W.2d 907, 913 (Iowa 1981)); accord United States v. Spratt, 735 F. App'x 219, 220 (8th Cir. 2018). However, an element of the § 708.4(1) offense Bragg committed requires causing "serious injury," not "bodily injury." As those terms may not have identical meanings, whether a § 708.4(1) conviction qualifies as an ACCA predicate under the force clause is an issue of first impression.

We find the answer to this question in controlling Eighth Circuit precedents, interpreted in light of the Supreme Court's caution that a showing of overbreadth:

> requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).

In Quigley, neither the defendant nor our independent survey of Iowa precedents "identif[ied] any Iowa cases where an individual was convicted [of assault with intent to inflict serious injury] without having at least threatened to use physical force." 943 F.3d at 394. The same is true here. While Bragg cites cases discussing the term "serious injury" in non-analogous circumstances, "we can think of no non-fanciful, non-theoretical manner in which to commit [willful injury] without at least threatening use of physical force." Quigley, 943 F.3d at 395 (quotation omitted); accord United States v. Tinlin, 20 F.4th 426, 428 (8th Cir. 2021) (applying Quigley analysis in concluding that domestic abuse assault with intent to commit serious injury is a crime of violence under the Guidelines career offender provisions), petition for cert. docketed, No. 21-8191 (June 21, 2022); United States v. Chapman, 720 F. App'x 794, 796 (8th Cir. 2018).

Bragg argues that this "realistic probability" analysis does not apply because § 708.4(1) is "unquestionably overbroad," and "[o]verbroad statutory language alone is sufficient to establish that the statute does not qualify" under the force clause, citing Gonzalez v. Wilkinson, 990 F.3d 654, 660 (8th Cir. 2021). Gonzalez, like Duenas-Alvarez, was a case arising under the Immigration and Nationality Act. In Peh v. Garland, 5 F.4th 867, 871-72 (8th Cir. 2021), we labeled Gonzalez a "competing view" and remanded to the BIA with directions to explain its understanding of the "realistic probability" requirement. We have not applied Gonzalez in an ACCA or career offender force clause case and decline to do so here.

In an Eighth Circuit Rule 28(j) letter, Bragg asserts that the Supreme Court's recent decision in United States v. Taylor, 142 S. Ct. 2015 (2022), "definitively held that overbroad statutory language alone is sufficient to establish that a statute is not a categorical match." We disagree. The Court in Taylor noted that the case involved "only whether the elements of one federal law align with those prescribed in another," whereas in Duenas-Alverez, the Court had noted a federalism concern in ruling that "it made sense to consult how a state court would interpret its own State's law." 142

-12-

S. Ct. at 2025. Thus, <u>Taylor</u> did not overrule our controlling "realistic probability" precedents such as <u>Quigley</u> and <u>Tinlin</u>.

Bragg further argues that Iowa Code § 708.4(1) is overbroad because it requires an "act," and the statutory definition of that term "includes a failure to do any act which the law requires one to perform." Iowa Code § 702.2. In <u>Clark</u> we rejected this argument in concluding that a § 708.4(2) conviction was an ACCA violent felony. That ruling governs here because the "act" element is applicable to all § 708.4 offenses. <u>Clark</u>, 1 F.4th at 637.

For these reasons, the district court properly determined that Bragg's § 708.4(1) willful injury conviction is an ACCA predicate violent felony.

## B. The 2010 Illinois Armed Robbery Convictions

Bragg also challenges the use of two 2010 Illinois armed robbery convictions as ACCA predicate violent felonies. Not surprisingly, like the Seventh Circuit, we have previously held that an Illinois armed robbery conviction is an ACCA violent felony under the force clause because an element of the offense is the use of "the amount of force necessary to overcome a victim's resistance." <u>Dembry v. United States</u>, 914 F.3d 1185, 1189 (8th Cir. 2019), quoting <u>Stokeling v. United States</u>, 139 S. Ct. 544, 555 (2019); <u>see</u> <u>Shields v. United States</u>, 885 F.3d 1020, 1023-24 (7th Cir. 2018), vacated in light of <u>Stokeling</u>, 139 S. Ct. 1257 (2019). In <u>Borden v. United States</u>, the Supreme Court subsequently held that offenses with a *mens rea* of recklessness do not qualify as "violent felonies" under § 924(e)(1). 141 S. Ct. 1817, 1834 (2021) (plurality opinion). Bragg argues that, applying <u>Borden</u>, the Illinois armed robbery statute at the time of his 2010 convictions was overbroad because

-13-

"robbery and armed robbery could be committed with purpose, knowledge, or recklessness."[3] We disagree.

At the time of Bragg's convictions, the Illinois statute provided that "[a] person commits robbery when he or she takes property . . . from the person or presence of another by the use of force or by threatening the imminent use of force." 720 Ill. Comp. Stat. 5/18-1 (2010). Bragg was convicted of armed robbery because the robberies were committed while "he or she carries on or about his or her person or is otherwise armed with a firearm." 720 Ill. Comp. Stat. 5/18-2(a)(2)

The Tennessee statute at issue in Borden defined the crime as "[r]ecklessly commit[ting] an assault." Borden 141 S. Ct. at 1822, citing Tenn. Code Ann. § 39-13-102(a)(2) (2003). By contrast, the Illinois armed robbery statute at issue had no explicit *mens rea* requirement. Thus, it was not facially overbroad. But Bragg argues that Illinois appellate cases interpreting the statute establish that it "can be accomplished with mere recklessness." This contention requires a closer look.

The Illinois Criminal Code provides that, "when a statute neither prescribes a particular mental state nor creates an absolute liability offense, then either intent,

_____

[3]In 2015, Illinois amended the robbery statute to provide that a person commits robbery "when he or she *knowingly* takes property . . . by the use of force or by threatening the imminent use of force." 720 Ill. Comp. Stat. § 5/18-1 (2015) (emphasis added). Bragg asserts that the statute in effect when Bragg was convicted of the robberies controls. The government does not disagree, so we assume without deciding that Bragg is correct. We note, however, that in revisiting the force clause issue after the Supreme Court remanded in Martin for reconsideration in light of Borden, we applied the 2015 version of the Illinois statute enacted after the defendant's prior offense. 15 F.4th at 884. In Martin we affirmed the career offender enhancement under the Guidelines "enumerated offenses" clause, which includes "robbery." USSG § 4B1.2(a)(2). As robbery is not an enumerated offense under the ACCA, § 924(e)(2)(B)(ii), Martin does not control the post-Borden issue in this case.

-14-

knowledge or recklessness applies." People v. Gean, 573 N.E.2d 818, 822 (Ill. 1991). As no mental state is included in the statutory definition, robbery is a "general intent crime," and a *mens rea* element need not be set forth in the indictment or information, see People v. Thompson, 466 N.E.2d 380, 384-87 (Ill. App. Ct. 1984), or in the instructions to the jury, see People v. Avant, 532 N.E.2d 1141, 1144-47 (Ill. App. Ct. 1989). However, the Criminal Code provides that a person is not guilty of armed robbery unless he or she acted while having the mental state of intent, knowledge, or recklessness. Avant, 532 N.E.2d at 1145. These cases establish at least a theoretical possibility that an Illinois armed robbery conviction could be based on reckless conduct, though counsel for Bragg admitted at oral argument that such a situation is hard to imagine. In these circumstances, it is again appropriate to apply the "realistic probability" principle, as we previously did in concluding that this offense requires the amount of force the force clause requires. Dembry, 914 F.3d at 1188.

Beginning with the premise that it is hard to imagine a reckless armed robbery, we find the logical answer to this question confirmed by the Supreme Court of Illinois decision in People v. Jones, 595 N.E.2d 1071 (Ill. 1992). In Jones, the defendant was charged with armed robbery. The jury acquitted him of that charge but convicted him of the lesser-included offense of theft. The Illinois Court of Appeals reversed the conviction, concluding theft is not a lesser included offense because it contains "the additional element of intent." Id. at 1073. The Supreme Court reversed. "When a robbery is committed or attempted, common sense dictates that the perpetrator either intends to deprive the owner permanently of the use or benefit of the property, or knowingly uses . . . the property in such manner." Id. at 1075 (cleaned up). With this guidance from the Supreme Court as to the *mens rea* element *inherent* in armed robbery, we see no realistic probability that a person would be charged with and convicted of Illinois armed robbery based on merely reckless conduct. Bragg does not even attempt to fill that void. Accordingly, the district court did not err in concluding his 2010 Illinois armed robberies were ACCA violent felonies.

-15-

Bragg further argues that even if the armed robbery convictions were violent felonies, they were not "committed on occasions different from one another," as § 924(e)(1) requires. We review this issue *de novo*. United States v. Willoughby, 653 F.3d 738, 741 (8th Cir. 2011). In United States v. Wooden, 142 S. Ct. 1063 (2022), the Supreme Court recently adopted a multi-factor analysis for resolving this issue which focuses on the timing, "[p]roximity of location," and "character and relationship" of the multiple offenses at issue. Id. at 1071. The Court expressed confidence that its test would be easy to apply. "[I]n law as in life, it is usually not so difficult to identify an 'occasion' . . . [and] most cases should involve no extra-ordinary work." Id. at 1071. The Court noted that circuits already applying its multi-factor approach "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" Id.[4]

Here, the government met its burden to prove the two robbery convictions were committed on different occasions. At sentencing, the government submitted certified court records establishing that on August 14, 2010, Bragg robbed victim "B.K.," a crime investigated by Rock Island Police. On August 16, Bragg robbed "E.D.," a crime investigated by Moline Police. Bragg robbed two victims, two days apart. That the cases were investigated by different local police departments is evidence of different locations. Thus, the district court did not err in concluding that Bragg's two robbery convictions were committed on different occasions and could serve as separate ACCA predicate offenses.

---

[4]Our prior decisions have carefully reviewed the circumstances in each case. Compare Willoughby, 653 F.3d at 742-43, with United States v. Abbott, 794 F.3d 896, 898 (8th Cir. 2015). Viewing our precedents as a whole, we see no inconsistency with the Supreme Court's focus in Wooden. As we recently said in United States v. Stowell, "Wooden didn't supplant our three-factor test" in Willoughby. No. 21-2096 slip op. at p.3 n.2 (8th Cir. July 25, 2022).

## IV. Conclusion

The judgment of the district court is affirmed.

_____